ORRIN L. JENKS AND WILLIAM S. JENKS v. FREDERICK
L. WELLS.

*Order—Conditional acceptance—Abandonment of contract by
drawer—Notice to payee.*

1. Defendant accepted an order in favor of the plaintiffs, drawn on
   him by contractors for sinking a salt well, and payable when
   a certain depth was reached, subject, however, to the con-
   ditions of the contract. The contractors being unable to com-
   plete the contract, defendant assumed its performance, after
   which the contractors had nothing to do with the job except
   to oversee it, and defendant furnished everything, and paid the
   men. And it is held that the defendant did not, by such con-
   ditional acceptance, obligate himself to notify plaintiffs of any
   breach of the contract by the contractors, and if he was com-
   pelled, as the only means of securing the completion of the
   work, to take upon himself the burden of paying the men and
   for the materials, he had the right to deduct these payments
   from the contract price, whether he gave such notice or not,
   and without reference to whether the transaction was called
   an "abandonment" of the contract or not.

2. About the time that defendant assumed the completion of the
   work, the contractors gave him a chattel mortgage on their
   tools, etc., which recited an indebtedness of about $800 for
   cash and materials supplied and wages assumed by the defend-
   ant, and was conditioned for the sinking of the well in a
   manner satisfactory to the defendant, and for the payment of
   all moneys necessarily paid out by him on the job above the
   contract price. The mortgage had been foreclosed by the
   defendant when plaintiffs sued him on his acceptance of said
   order. And it is held that, as the plaintiffs were interested
   with the defendant in the performance of the contract, the
   mortgage inured to the benefit of both parties; and if it should
   appear on a second trial that the contract price, with the sum
   realized on the foreclosure, exceeds the amount paid by
   defendant before he was compelled to assume the work, and
   the cost to him thereafter, the Court see no obstacle to a
   recovery to that extent.

Error to St. Clair. (Canfield, J.) Argued February
19, 1892. Decided March 4, 1892.

*Assumpsit.*   Defendant brings error.   Reversed.   The facts are stated in the opinion.

*Avery Bros.*, for appellant.

*Stevens & Merriam*, for plaintiffs.

MONTGOMERY, J.   On the 31st day of March, 1886, the defendant, having commenced to sink a salt well, and having reached a depth of 650 feet, entered into a contract with Mason & Bro. by which Mason & Bro. agreed to sink the well an additional 1,200 feet at the agreed price of $1.75 per foot.   Advances were made to the amount of about $263.30 prior to August 9, and on August 9 Mason & Bro. gave plaintiffs an order as follows:

"PORT HURON, August 9, 1886.
"FRED. L. WELLS, Esq.,
        "Port Huron, Mich..
    "*Sir:* Please pay to William S. Jenks and Orrin L. Jenks, doing business under the style and firm name of the Phœnix Iron Works, at the said city of Port Huron, the sum of nine hundred dollars out of the moneys due and to become due to us for labor performed in the drilling of a salt well in the city of Port Huron, as employed by you.   Said money to be paid when the undersigned shall have reached the depth of 1,800 feet in the drilling aforesaid, or as soon as salt shall be found therein at any time before said depth shall be reached.
                "Z. T. MASON & BRO."

An acceptance in the following words was indorsed upon the order:

"I hereby accept the foregoing order; depth to be 1,850 feet, instead of 1,800, as above, and subject to all the conditions expressed in my contract with said Masons.
                "FRED. L. WELLS."

Mason & Bro. commenced drilling about August 1, and continued until the 16th or 18th of the same month, when a strike occurred among their men, all of whom

refused to continue work for the Masons. Mason, who was called as a witness for plaintiffs, testifies that he found that he was unable to proceed with the work; and that he made an arrangement with the defendant that the defendant would from that time pay all expenses, and that the defendant did in 'fact pay all expenses from that time on. The defendant testified that he, the defendant, was to furnish the money to go on and complete the work, and that Mason abandoned the contract to him; that about the date of this alleged abandonment Mason & Bro. executed to defendant a chattel mortgage covering their tools employed in the business, and reciting an indebtedness from the Masons to Wells in the sum of $800 (about) for cash and materials supplied for drilling well and wages assumed, and conditioned that the said Mason & Bro. should put down the well for said Wells in a satisfactory manner, and should pay or cause to be paid the said Wells all moneys paid out necessarily on said job over the price agreed, and the debt aforesaid, on or before the 20th day of November, 1886. From this time on, the Masons had nothing to do with the work except to oversee it. Defendant furnished everything, and paid the men, and, according to his testimony, paid out, including what had been previously advanced, a sum exceeding the contract price. The defendant also claims that at the time of the alleged abandonment to him by the Masons he notified plaintiffs of the change, and that his course had their sanction.

The circuit judge charged the jury as follows:

"If you find from the evidence that Mason & Bro. did abandon and wholly give up the performance of their contract, and that the work was completed by the defendant, after notice of the fact to Mr. Jenks, and the arrangement I have stated claimed by him, and that the fair expense of the well incurred by him was equal to or in excess of the contract price, the defendant

would not be liable in this action, and your verdict should be in his favor, so far as that is concerned."

In another place in his charge the circuit judge states:

"The plaintiffs claim that Mason & Bro. never surrendered or abandoned the contract, but that it was completed under this firm while embarrassed financially so as to be unable to finish the work without assistance, yet received assistance from Mr. Wells; that in paying for the labor and expense of completing the work Mr. Wells was doing this for them, and took security therefor by means of a chattel mortgage on the property of the firm, which has been given in evidence; and plaintiffs deny that any such arrangement or agreement was made between the defendant, Wells, and Mr. Jenks, as I have stated, under which the defendant was to complete the work."

And again:

"In other words, if you find that the Masons had begun the work, and the order was accepted; that Wells agreed with the Masons that he would advance money necessary to meet the running expenses, and the Masons gave Wells a chattel mortgage to secure him for such sums as he might advance, and that the work went on under such arrangement,—the defendant would be liable to the plaintiffs for the amount of the order and interest, unless the jury find that the defendant notified the plaintiffs that he had assumed payment of the cost, and the plaintiffs agreed not to hold him responsible."

We think these instructions are erroneous. The mortgage did not purport to secure Wells for moneys thereafter advanced to Mason & Bro., except in so far as the moneys so advanced should exceed the contract price agreed upon; and for this reason were misleading. But we think there is a more radical error. The defendant, by the conditional acceptance indorsed, did not take upon himself the obligation of notifying plaintiffs of any breach of contract by the Masons. If the fact were that as the only means of securing the completion of the work the defendant was compelled to take upon himself the burden

of paying the men and for the materials, he had the right to deduct these payments from the price named in the contract, and this would be so whether he gave notice to the plaintiffs or not, and without reference to whether the transaction was called an "abandonment" or not.

Mason was asked the following question:

"You heard the statement made here by Mr. Wells in respect to your having surrendered up your contract. State whether that is so or not.

"A. I do not suppose it was."

The liability of the defendant cannot be made to depend on what Mason supposed. It is made clear by his testimony that the defendant did in fact pay the expenses from that day of every nature, and there was. no evidence that this was the result of any collusion between Mason and Wells, nor was there any evidence that Wells acted in bad faith. We think it should have been said to the jury that as matter of law Wells was entitled to credit himself with the sums so paid out.

It appeared that the mortgage given to Wells had been foreclosed by him. This security inured to the benefit of both plaintiffs and himself, as both were interested in the performance of the contract; and if it should appear on a new trial that the contract price, together with the sum realized on the foreclosure of this security, exceeds the amount paid by the defendant to the Masons before he was compelled to assume control for his own protection, and the cost to him thereafter, we see no obstacle to a recovery upon the order to that extent.

There was no error in refusing to permit defendant to show that the consideration of the order was the machinery which was sold to the Masons conditionally, and that such machinery was afterwards reclaimed by the plaintiffs, as it appeared beyond dispute that there

was an agreement between the parties that the amount of the order might be applied on other indebtedness.

The evidence in regard to the value of the use of the machinery was properly eliminated by the trial judge.

For the errors referred to, the judgment will be reversed, with costs, and a new trial granted.

The other Justices concurred.