## A. T. GILLEY *v.* HARRELL *et al.**

### *(Nashville.* December Term, 1906.)'

1. **BILLS AND NOTES.** Negotiable only when payable to order, or to bearer.

   Under the negotiable instruments law (1899, ch. 94) and- under the common law, a note, in order to be negotiable, must be payable to order, or to bearer.

   Act cited and construed:  1899, ch. 94, secs. 1, 8, 9, and 184.

2. **SAME.** Code provision that a note need not be payable to order to be negotiable, repealed by ch. 94, Acts 1899.

   The Code provision (Shannon's Code, sec. 3506), in substance, that a note, to be negotiable, need not be payable to the order, is, by implication, repealed by the negotiable instruments law (Acts of 1899, ch. 94), because the latter   act is directly in conflict therewith, and embraces the entire subject-matter thereof.

   Code cited and construed:  Sec. 3506 (S.); sec. 2714 (M. & V.); sec. 1957 (1858).

   Act cited and construed: 1899, ch. 94.

   Case cited and approved: Poe v. State, 85 Tenn., 495.

3. **STATUTES.** Negotiable instruments law of 1899 does not contain more than one subject, and the body of the act is not broader than the caption.

   The negotiable instruments law of 1899 (ch. 94), entitled "A general act relating to negotiable instruments, being an act to establish a law uniform with the laws of other States upon that subject," covers the entire field of the law of negotiable instruments, and section 123, which provides that, "A cancellation made unintentionally, or under a mistake, or without authority

---

*As to effect of failure to procure license for business or validity of contract, see note to Buckley v. Humason (Minn.), 16 L. R. A., 423.

of the holder, is inoperative; but where an instrument or any signature thereon appears to have been canceled, the burden of proof lies on the party who alleges that the cancellation was made unintentionally or under a mistake or without authority," is not a distinct subject beyond the scope of the title as an effort to legislate upon the laws of evidence concerning the burden of proof, and said act is not in contravention of sec. 17, art. 2, of the constitution which provides that "No bill shall become a law which embraces more than one subject, that subject to be expressed in the title."

Act cited and construed: 1899, ch. 94.

Constitution cited:   Art. 2, sec. 17.

4.  **BILLS AND NOTES.**  *Nonnegotiable note subject to equities between original parties in action by purchaser for value, before maturity, and without notice.*

A nonnegotiable note is held subject to the equities existing between the original parties thereto, and the fact that it was without consideration and procured from the maker by fraud, when he was too much intoxicated to care for his property, constitutes, a good defense in an action on the note by a purchaser for value, before maturity, and without notice of existing equities.

5.  **SAME.**  Dealer in.  Cannot recover on note bought without having license.

A dealer in notes, who has not paid the privilege tax and obtained a license as required by law, cannot maintain an action on a note purchased by him while thus dealing in violation of law.

Case cited and aproved:  Trentham v. Moore, 111  Tenn., 346.

6.  **SUPREME COURT.**  Will not remand for further proof for complainant, when he could not recover on undisputed facts, nor when the issues were made in the pleadings and fought out in the lower court.

The supreme court will not remand a case to the chancery court for further proof to be offered on behalf of complainant where, (1) under the undisputed facts appearing in the record, as sworn

Gilley v. Harrell.

to by the complainant himself, he would not be entitled to recover, and, (2) the issue upon which it is desired to offer further proof is one clearly made in the pleadings and which was fought out by the parties in the chancery court.

7. **SAME.** Will not dismiss without prejudice in case stated in headnote 6.

In a case such as that stated in the last preceding headnote, the supreme court will not dismiss the case without prejudice to the rights of complainant.

### FROM RUTHERFORD.

Appeal from the Chancery Court of Rutherford County.—W. S. BEARDEN, Chancellor.

B. L. RIDLEY, for Gilley.

EDGAR SMITH and JEFF McCARN, for Harrell et al.

R. H. SANSOM, Special Judge, delivered the opinion of the Court.

The complainant, A. T. Gilley, appeals to this court from the decree of the court of chancery appeals dismissing his bill. The original bill in the case was filed in the chancery court at Murfreesboro to collect a note for three hundred dollars alleged to have been executed by the defendant J. R. Harrell to one Robert B. Meeks, and by Meeks transferred and assigned to the complainant,

and seeking to foreclose a mortgage or deed of trust given to secure the payment of the note and to set aside a previously executed trust deed resting upon the property.

The bill alleges the execution and transfer of the note, and avers that the plaintiff is an innocent holder thereof, having acquired same before maturity, for value, and in due course of trade; and it is charged that the previously executed trust deed resting upon the property was fraudulent and void.

The defendant J. R. Harrell filed an answer, in which he says that he might have executed a note payable to Meeks for three hundred dollars, and might have executed a mortgage to secure the payment thereof, but that, if he did so, he was drunk at the time and incapacitated for the transaction of business, and that the note, if executed, was without consideration and obtained through fraud, and at a time when he was unable to care for or protect himself. The note sued on is in these words:

"$300.                    Murfreesboro, Tenn.,

February 5, 1903.

"On the 24th day of December, 1903, I promise to pay to Robert B. Meeks the sum of three hundred ($300) dollars, with interest from date. This note secured by a mortgage on thirty-five acres of land, this day executed by me and wife to Robert B. Meeks.

"J. R. HARRELL."

The note is indorsed as follows:

."I this day transfer and assign this note over to A. T. Gilley, for value received, with all the equities, this February 10, 1903.                     R. B. MEEKS."

It should be stated that the answer defends upon the ground that the complainant, Gilley, is a dealer in notes, and that the purchase of this note was void, because of his not having paid any license as such dealer.

Four errors are assigned to the decree of the court of chancery appeals. They are as follows:

"(1)  The court of chancery appeals misapplied the law to the facts found by it, and held that under the law as construed by it the note was nonnegotiable, and that there could be no innocent purchaser, although the court held complainant purchased it for value, before maturity, and without notice of pre-existing equities.

"(2)  The court erred in holding that complainant could not maintain this suit, because he has not taken out revenue license giving him authority to acquire this note and mortgage.

"(3) The court erred in holding as a matter of law that complainant had no right to have the cause remanded to supply the manifest omission in the proof that there was abundant consideration for the note and mortgage in the first instance.

"(4) The court finally erred in not allowing the dismissal in any event to be without prejudice."

Taking up these assignments of error in order: The court held that the note above copied was nonnegotiable, and this holding is attacked. Under the common law the

note was not negotiable. "When bills of exchange first came into use, as has already been explained, choses in action in general were nonassignable; and, in order that the intention of parties to make commercial paper assignable and negotiable may be indicated, it became the custom to make it in express terms payable to A., or order, or bearer, or using like words giving authority to convey. So, also, when promissory notes were by the statute of Anne declared to be negotiable, like bills of exchange, notes which would fall within the statute were described as containing these [to order or bearer] or other words of negotiability." Tiedeman on Com. Paper, sec. 27.

In other words, under the common law, in order that a note should be negotiable, it had to be payable to order, or to bearer, and not directly to the payee.

Section 3505 of Shannon's Code is in these words:

"Every note whereby the maker promises to pay money to any other person or order, or to the order of any other person, shall be negotiable in the same manner as inland bills of exchange by the custom of merchants."

Section 3506 of Shannon's Code is in these words:

"Every bill, bond or note for money, whether sealed or not, and whether expressed to be payable to the order or for value received or not, shall be negotiable in the same manner as promissory notes."

It is insisted very earnestly under this latter Code provision, which is section 1 of chapter 4 of the Acts of

1786, that the note in controversy in this case is a negotiable instrument.

By Acts 1899, p. 139, c. 94, entitled "A general act, relating to negotiable instruments, being an act to establish a law uniform with the laws of other States on that subject," it is provided by article 1, section 1, as follows:

"An instrument to be negotiable must conform to the following requirements: (1) It must be in writing and signed by the maker or drawer. (2) Must contain an unconditional promise or order to pay a sum certain in money. (3) Must be payable on demand or at a fixed or determinable future time. (4) Must be payable to order or to bearer."

By section 184 of this act it is provided:

"A negotiable promissory note, within the meaning of this act, is an unconditional promise in writing, made by one to another, signed by the maker, engaging to pay on demand or at a fixed or determinable future time, a sum certain in money to order or to bearer."

Section 8 of the act is in these words:

"An instrument is payable to order where it is drawn payable to the order of a specified person or to him or his order."

By section 9 of the act it is provided as follows:

"The instrument is payable to bearer (1) when it is expressed to be so payable, or (2) when it is payable to a person named therein or bearer, or (3) when it is payable to the order of a fictitious or nonexisting person, and such fact was known to the person making it so pay-

able, or (4) when the name of the payee does not purport to be the name of any person, or (5) when the only or last indorsement is an idorsement in blank."

The note in question in this case is not payable to either order or bearer. Under these provisions of the negotiable instruments law, and in order to be negotiable, it must be payable in one or the other of these ways, either to order or to bearer. The earnest insistence, however, of appellant, is that section 3506 of the Code (Shannon's), above quoted, is not repealed by the negotiable instrument act of 1899; that that act does not purport to repeal this section of the Code, which does make the note in question a negotiable instrument. This insistence, however, is not sound; for by necessary implication, section 3506 is repealed by this act, because directly in conflict therewith, and embracing the entire subject-matter thereof. *Poe* v. *State,* 85 Tenn., 495, 3 S. W., 658.

It is next insisted that if the act of 1899, the negotiable instruments law, does operate by implication as a repeal of section 3506 of the Code, then that the act is unconstitutional and void, as being in contravention of article 2, section 17, of the constitution of the State, which provides as follows:

"No bill shall become a law which embraces more than one subject, that subject to be expressed in the title. All acts which repeal, revive or amend former laws shall recite in their caption, or otherwise, the title or substance of the law repealed, revived or amended."

It is insisted that the act of 1899 is repugnant to this clause of the constitution in at least two particulars: (1) Because, as insisted, the act embraces two subjects, only one of which is embraced in the caption; and (2) that the body of the act is broader than the caption, and embraces other matters not indicated by the title.

And in support of this contention counsel say that section 123 of the act contains matter not embraced in the title, and that it is broader than the caption. Section 123 is in these words:

"A cancellation made unintentionally, or under a mistake or without authority of the holder, is inoperative; but where an instrument or any signature thereon appears to have been canceled, the burden of proof lies on the party who alleges that the cancellation was made unintentionally or under a mistake or without authority."

The insistence is that this section is a distinct effort to legislate, not upon negotiable instruments, but upon the location of the burden of proof, and that there is nothing in the title of the act that even remotely calls the attention of the members of the general assembly to the fact that rules of evidence were to be legislated upon. In respect of this contention it may be stated, in the first place, that the caption of the act is a very broad one. We repeat it here in this connection, "A general act relating to negotiable instruments, being an act to establish a law uniform with the laws of other States upon that subject," and we think that this caption is

broad enough to cover the entire field of the negotiable instruments law, and covers this question made in respect thereof as to its constitutionality.

Holding, as we do, that the instrument sued on is not negotiable under the terms of this negotiable instrument act, it follows as a matter of law that complainant holds same subject to such equities, if any, as existed between the original parties thereto, and it only remains to say what, if any, those equities are.

It should be stated that the court of chancery appeals holds as a fact that the complainant, Gilley, acquired this note for value and before its maturity. That court further finds as a fact that there was no consideration passed for this note as between the original parties thereto, the maker, Harrell, and the payee, Meeks, who was the assignor of complainant, Gilley.

It should be remembered in this connection that one of the defenses interposed in the answer is that, if the note was executed by defendant, it was done at a time when he was too drunk to be able to care for himself; and upon this question the court of chancery appeals say:

"As to the first question of fact, as to whether or not the defendant Harrell was drunk at the time of the execution of this paper, he states positively that he was. The only countervailing proof upon this subject is that of Mr. Richard Beard, who drew the note and mortgage upon which this suit is based, and who says that Meeks had spoken to him about drawing the note and mort-

gage, that Harrell came into his office on the evening the note was dated, and his impression is that his son was with him, and that Harrell said to him: 'Captain, I am sober. I've had no whisky to-day.' And his son said: 'Yes, sir; he is all right.' Mr. Beard further states, in answer to the direct question as to whether he was duly sober, that he was, and that he saw no signs of intoxication. It appears from the entire record that the defendant Harrell was very dissipated, and that he was easily imposed upon. It also appears that he had a son who was giving him much trouble. This is about the state of the evidence upon the issue as to whether or not he was drunk. Having executed the note, the burden of proof is upon him to show that he was drunk and incapable of understanding what he was doing. We are satisfied from the evidence of Mr. Beard that he (Beard) considered him sober. Outside of this testimony we have the fact that he did execute these papers, and we have his uncontradicted testimony to the effect that the note was totally without consideration. The issue was directly made in the pleadings that the defendant was drunk, incapable of knowing what he was doing, and that the note was wholly without consideration. If we should find from the proof that the note was wholly without consideration, then this itself is very strong evidence to indicate that the defendant was really drunk and did not know what he was doing. Counsel for the defendant Harrell insist, in the first place, that the complainant himself, on cross-examination, shows what the

consideration of this note was; but we have carefully read this, and have been unable to discover any such effect from the cross-examination. He most positively swears that there was no consideration whatever for this note. Counsel also insist that complainant, Gilley, shows in his testimony what the consideration was; but counsel is mistaken in this, because he stated most positively that he did not know what the consideration was."

And, quoting still further from that court's opinion:

"We find as a fact that the note was without consideration, and we are therefore led to the conclusion that, while he did not appear to be too drunk to understand things, he must necessarily have been in such mental condition from intoxication that he did not understand fully what he was doing."

The quotations above made are from the original opinion. There was petition for a rehearing and additional findings of fact, and in reply to that petition the court of appeals says:

"On the subject of Harrell's drunkenness, and his being easily imposed upon, and that he was much dissipated, these are inferences which the court has drawn from the entire record. In the first place, we have the very pregnant fact that he executed a note and a deed of trust, which this record shows, and the issue plainly made, was without consideration when he did it. According to complainant's own witness, he felt it incumbent upon him to state that he was not then drunk, and that he had not had any whisky that day. It is gen-

erally some evidence, at least, that a man is drunk, when he is protesting that he is not drunk. This expression, made in the presence of Capt. Beard, would indicate to any impartial mind that he was generally drunk, at least. Next, we have a very potent fact—that it was deemed necessary by him for him to execute a spendthrift trust to his brother. This indicates, not only his inebriety, and that he was easily imposed upon, but that he was conscious of that fact himself. Again, in his cross-examination, he has testified that he had been drunk before this time, and had no recollection of what he had done. Harrell also shows in his testimony that, after he had executed this spendthrift trust, he consulted with his brother about the disposition of his property and whatever he did. From all of these things we came to the conclusion that he was easily imposed upon and he was dissipated. We still believe this to be a fact, as these things would indicate; but, even if they are not facts, the fact remains, in our opinion, that he was too drunk to know what he was doing when he executed the note in question, and, at least, that it was without consideration, and these are the material facts in this case, as shown by this record."

Under these findings of fact by the court of chancery appeals, this court is left no other recourse than to hold that the note was without consideration, and that Meeks, the assignor of the complainant, overreached the defendant at the time of its execution, when he was in such condition, from the excessive use of intoxicants, as that he

was incapable of caring for himself or property rights and interests, and Meeks' action in the premises constituted and operated as a fraud upon his rights; and the instrument being nonnegotiable, and the complainant having secured and holding same subject to all the equities between Meeks and Harrell, and it being without consideration, obtained through fraud, the first assignment of error is overruled.

It is next insisted that the court of appeals erred in holding that complainant could not maintain this suit because he had not taken out license giving him authority to deal in notes. Upon this question the court of appeals say:

"We find the facts to be that he (Gilley) had no license at the time he purchased this note; and we also find that he states in his examination that he trades for notes. He states himself: 'I traded for notes. I did not have any license.' It is true, on re-examination, he was asked by his counsel, 'Have you ever shaved any notes, or had any license for that, or held yourself out as a shaver of notes?' He answers, 'No, sir; I have never had any license.' Exactly what he means his 'No, sir,' to apply to is not clear; but, as we have stated, he does testify in another place that he traded for notes. This makes him a dealer in notes; and it is shown that he purchased and shaved this note, and purchased it at a discount, and he therefore was evidently a dealer in notes, and, under the authorities, for this reason could not recover."

This is a quotation from the original opinion of the court of appeals. In reply to the petition for additional findings of fact, the court of appeals say on this question:

"We have in our previous opinion, stated the evidence upon this subject, taken from the deposition of Mr. Gilley himself. He says that he bought this note, and made a statement which we have heretofore set out, and which we again quote literally: 'I traded for notes. I did not have any license.' We are content to put that statement in as our findings of fact, and our conclusion of law therefrom is that he was a dealer in notes, and, under the act, liable for a license, and, not having one, cannot recover under our decisions."

In discussing this question of what constitutes the exercise of a privilege upon which the legislature may impose a license or tax, as a business, this court has said:

"It follows that the legislature cannot tax a single act *per se* as a privilege, inasmuch as such act, in the nature of things, cannot in and of itself constitute a business avocation or pursuit; hence it is a matter of importance whether they make a business of it or not, since, if they do not, there is no privilege to be subjected to taxation. This portion of the statute must, therefore, be held nugatory. Yet the proof of a single act which is characteristic of any of the privileges created by the legislature is by no means unimportant, because

118 Tenn—9

evidence of such act necessarily casts the burden of proof upon the defendant to show that he was not in fact exercising the privilege; that is, engaged in a business or occupation of the kind indicated by the act. The doing of such an act makes a *prima facie* case against him." *Trentham* v. *Moore,* 111 Tenn., 346-353, 76 S. W., 904.

One of the defenses set up in answer is that complainant is not entitled to recover upon the note sued on because of a want of license; he being, as alleged, a dealer in notes. His statement is that "I traded in notes and had no license." The purchase of this note itself made a *prima facie* case against him that he was a dealer in notes, and put the burden of proof upon him to show the contrary, and under notice in the pleadings that he was required so to do, and he has wholly failed to meet and discharge that obligation of the law. We therefore think that the court of chancery appeals was right in its conclusion under this head, and the second assignment of error is overruled.

The third and fourth assignments of error, which go to the point that the court of chancery appeals was in error in not having remanded this case for further proof, or, at least, dismissed the bill without prejudice, may be treated together; and upon this subject the court of appeals say:

"As a petition to remand the case for further proof or to dismiss it without prejudice, we have to say that this is not, in our opinion, a proper case for this course

to be pursued, for two reasons:    (1)    Under the undisputed facts as sworn to by the complainant himself, we think he could not recover, because he had not paid the revenue license authorizing him to deal in notes. (2)    Because, on the question as to whether or not he was an innocent purchaser, under our view of the law, he could not be an innocent purchaser, because the note was not, under the law as it now stands, a negotiable note, and therefore he necessarily took the note affected by all the equities that existed between the original parties.    This part of the case could not be changed by any proof that could be introduced, if the case were remanded or a new suit were brought.    (3)   It is not proper to remand a case, nor to allow it to be dismissed without prejudice, on the issue of there being no consideration for the note, because this was one of the principal issues, plainly formed and stated in the pleadings, and upon which the case was fought out.    The defendant in his answer, expressly stated that the note was without consideration, and positively swore to this fact; and this statement was not overcome by any evidence offered on behalf of the complainant.    There was a statement by complainant himself that there was a consideration for the note; but this was excepted to, and counsel's attention was plainly called to the point, and no better evidence was offered.    It will not do to remand cases for new trial on an issue that had been clearly made and fought out by the parties.    If this was done, there never could be an end to litigation."

Under the findings and statement of facts by the court of appeals, we quite agree with that court in the conclusion it has reached upon this branch of the case, and overrule the third and fourth assignments of error.

It follows that there is no error in the decree of the court of chancery appeals; and it is affirmed, with costs.