Ahrens & Ott Mfg. Co. v. Moore & Sons.

AHRENS & OTT MFG. CO. *v.* GEORGE MOORE & SONS.

(*Nashville.*   December Term, 1914.)

1. BILLS AND NOTES.   Order.   Oral acceptance.

Where an order for $1,000 was presented to defendants and pay-
ment demanded, and they admitted they owed the drawer that
amount and promised to pay it as soon as they could obtain
settlement from the government on the contract under which
the alleged indebtedness arose, there was a verbal acceptance.
(*Post, p.* 194.)

2. BILLS AND NOTES.   Negotiability.   Person to whom pay-
able.

An order transferring and assigning to A. "$1,000 of the indebted-
ness due us by G.," and authorizing and requesting G. to pay to ·
A. the same on presentation to G. of the transfer, was not
negotiable, as the negotiable instrument law (Acts 1899, ch. 94,
sec. 1, subsec. 4) provides that an instrument, to be negotiable,
must be "payable to order or bearer."   (*Post, pp.* 194, 195.)

Acts cited and construed:   Acts 1899, ch. 94, sec. 132.

Cases cited and approved:   Gilley v. Harrell, 118 Tenn., 122;
Montague v. Myers, 58 Tenn., 539.

3. BILLS AND NOTES.   Oral acceptance.   Nonnegotiable orders.
A nonnegotiable order may be accepted verbally.   (*Post, pp.*
194, 195.)

4. ASSIGNMENTS.   Assignment of   special   fund.   Defenses
against assignee.

An order recited that the drawers being desirous of securing to
plaintiff the payment of an indebtedness owing to it by the
drawers, and that whereas defendant owed the drawers more
than $1,000, they transferred and assigned to plaintiff $1,000
of such indebtedness due by defendant and authorized defend-
ant to pay plaintiff the sum of $1,000 on presentation of the
order.   Defendant was a contractor employed by the govern-
ment to construct a building, and the drawers were subcon-

Ahrens & Ott Mfg. Co. v. Moore & Sons.

tractors who had, when the order was drawn, not completed their work. Under defendant's contract with the government, it was compelled to pay for all materials and all the work, and the drawers were under a similar contract with defendant. After the order was given and accepted, it became necessary for defendant to pay for other materials essential to the sub-contract of the drawer, so that, at the close of the work, the drawer was indebted to defendant. *Held*, that the order was intended to appropriate the special fund in the hands of the defendant, and, after that fund was wiped out by the debt of drawer, the defendant was not liable to plaintiff. (*Post, pp.* 195-198.)

Cases cited and approved: Jenks v. Wells, 90 Mich., 515; Beardsley v. Cook, 143 N. Y., 144.

5. ASSIGNMENTS. Construction. Nature.

The instrument so drawn was an assignment. (*Post, pp.* 198-200.)

Case cited and approved: Nolen Bros. Lumber Co. v. Dudley Lumber Co., 128 Tenn., 11.

6. ASSIGNMENTS. Acceptance. Construction.

Where A. assigned to plaintiff a debt owing to A. by defendant, who was a contractor under whom A. was a subcontractor, and when plaintiff presented the assignment, defendant stated that he owed A. something more than the amount, and was simply waiting for the work to be approved by the inspector, and that he would pay it, but later A., as subcontractor, became indebted to defendant for more than the amount represented by the assignment, defendant was not liable to plaintiff; the promise to pay not being supported by any consideration. (*Post, pp.* 198-200.)

7. NOVATION. Nature.

The facts did not make out a case of novation. (*Post, pp.* 198-200.)

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.—JOHN ALLISON, Chancellor.

J. H. TURNER, for appellant.

STOKES & STOKES and ALBERT DULING, for appellee.

MR. CHIEF JUSTICE NEIL deilvered the opinion of the Court.

This suit was brought upon the following paper:

"Whereas, we, G. C. Anderson & Company, of Jackson, Tennessee, a firm composed of G. C. Anderson and S. P. Anderson, are indebted to the Ahrens & Ott Manufacturing Company, in the sum of $1,641.20;

"And whereas, we are desirous of securing payment of said indebtedness to the amount of $1,000;

"And whereas, George Moore & Sons, of Nashville, Tennessee, are indebted to the firm of G. C. Anderson & Company, in excess of the sum of $1,000;

"Now, therefore, we do hereby make over, transfer, and assign to the Ahrens & Ott Manufacturing Company, $1,000 of the indebtedness due us by George Moore & Sons of Nashville, Tennessee, the sum to be applied as a credit on the amount due by us to the Ahrens & Ott Manufacturing Company, and we do hereby authorize and request George Moore & Sons of Nashville, Tennessee, to pay to the Ahrens & Ott Manufacturing Company, the sum of $1,000 on the presentation to George Moore & Sons, of Nashville, Tennessee, of this transfer and assignment.

"Witness our hands this the 5th day of June, 1911."

1. The respective counsel in presenting this case have treated the foregoing instrument as an order; the complainants' as an order nonnegotiable; the defendants' as a negotiable order, in substance an inland bill of exchange. Treating it as an order, counsel have discussed the question whether an oral acceptance has been proven. For the present, treating it as an order, and addressing ourselves to the question whether there was an oral acceptance, we find that, according to the weight of the evidence, when the paper was presented to defendants in July or August, 1911, and payment of the $1,000 demanded, they admitted they owed G. C. Anderson & Co. the sum mentioned, and promised to pay it as soon as they could obtain a settlement from the government of the United States on the contract under which the alleged indebtedness arose; defendants being the original contractors, and G. C. Anderson & Co. subcontractors, under contract with defendants. If the instrument be an order, we think the facts stated would show a verbal acceptance.

2. It is insisted, as matter of law, that the acceptance, being verbal, was not binding. This contention is based on the postulate that the instrument is a negotiable inland bill of exchange, and that, under our negotiable instrument law, the acceptance, to be binding, must be in writing. Acts of 1899, ch. 94, section 132. But under subsection 4 of section 1 of the same act, an instrument, to be negotiable, "must be payable to order or to bearer." The instrument sued on is

not so payable, and therefore does not fall within the negotiable instruments law. *Gilley* v. *Harrell,* 118 Tenn., 122, 101 S. W., 424. A nonnegotiable order may be accepted verbally. *Montague* v. *Myers,* 58 Tenn., (11 Heisk.), 539.

3. It may be fairly inferred, from the language of the instrument sued on, that the intention was to appropriate some special fund in the hands of the defendant, and this fact clearly appears from the oral evidence submitted by both parties. , Defendants had been employed by the United States government to erect a government building in the city of Jackson. G. C. Anderson & Co. were subcontractors. The $1,000 which is the subject of the order was expected to be paid out of the money which would be due to Anderson & Co. under that contract. When the order was given and accepted, Anderson & Co. had not yet completed their work. Under the terms of defendants' contract with the government, they were compelled to pay for all materials and for all work. Anderson & Co. were under a similar contract with defendants. When Anderson & Co. completed their subcontract, nothing was due them, because, after the order was given and accepted, it became necessary for defendants to pay for other material essential to fill the subcontract of Anderson & Co., so that, at the close of the work of the latter, they were indebted to defendants. The latter paid nothing to Anderson & Co. personally after the acceptance of the order, but

only for such things as were necessary to complete the work of Anderson & Co., pursuant to their contract.

Under these facts it is insisted by defendants that they are not liable to pay complainants anything on the order. We think this contention is sound. In the case of *Montague* v. *Myers*, supra, the order was drawn on Montague, requesting him to pay $200 "out of the twenty-five per cent. back pay for foundation at old Crutchfield grounds," and was signed W. A. Howard & Co. The latter soon after absconded without completing the work, but Montague hired hands and finished it. It seems that Montague accepted the order generally, though the terms of the acceptance are not stated in the opinion of the court. The court said:

"We think the facts show a verbal acceptance; but this order was drawn on a particular fund, and Montague was only bound to pay it in the event there was such fund."

It was held in that case, however, that inasmuch as Montague did not insist on a forfeiture of the back pay due to Howard & Co. by reason of their failure to complete the contract, but himself finished the work, and as on this basis there was found to be due Howard & Co. enough to pay the order, it was his legal duty to pay it. Other cases in point are *Jenkins* v. *Wells,* 90 Mich., 515, 51 N. W., 636, and *Beardsley* v. *Cook,* 143 N. Y., 144, 38 N. E., 109.

In the first of these cases it appeared that Mason & Co. had agreed to finish the drilling of a salt well for

Wells. They gave an order to Jenkins on Wells for a certain sum of money. The order concluded:

"Said money to be paid when the undersigned shall have reached the depth of 1,800 feet in the drilling aforesaid, or as soon as salt be found therein at any time before said depth shall have been reached."

The acceptance was:

"I hereby accept the foregoing order; the depth to be 1,850 feet, instead of 1,800 as above, and subject to all the conditions expressed in my contract with said Masons."

The order was dated August 9, 1886, and Mason quit work on the 16th or 18th. Wells had to complete the work at his own expense. It was held that he was entitled to credit for what it cost him to complete the work. The case does not show what were the terms of the contract referred to in the acceptance.

In the second case it appeared that Cook had employed certain builders to construct some houses for him. The builders entered upon the performance of their contract, and on the 11th of December, 1890, a considerable part of the work had been done, when the plaintiff Beardsley procured from the builders a written order upon defendant Cook in which they requested him to retain and pay to Beardsley from the last payment to be made to them under their contract the sum of $1,175, according to the terms of their contract with the plaintiff. Cook wrote across the face of the order his acceptance. An action subsequently brought on the accepted order. The builders never completed the

houses. There was a clause in the building contract to the effect that in case the builders failed to complete the houses, and furnish the necessary materials and labor for that purpose, the defendants might do it, and deduct the expense of completion from any sums unpaid upon the contract. Cook did complete the houses under this provision. The court held that Cook was entitled to credit for the costs of completion, and that only the balance that might be left in his hands would be liable to Beardsley.

4. In what has been said we have treated the instrument sued on as an order rather than as an assignment. We are of the opinion, however, that under a proper construction the instrument sued on is really an assignment. It not only uses appropriate words to assign the indebtedness, but in the last line it is called an assignment. It is not even addressed to George Moore & Sons, although in the body of it a request is made that the latter pay the $1,000. It also appears from the paper that it was taken for purpose of security. The assignment being for the security or payment of a pre-existing debt, and the instrument being also nonnegotiable, it would, in any event, be open to offsets, or counterclaims, in favor of George Moore & Sons, arising out of the nature of the indebtedness as above indicated. *Nolen Bros. Lumber Co.* v. *Dudley Lumber Co.*, 128 Tenn., 11, 156 S. W., 465, Ann. Cas., 1914D, 744. It should be further remarked that shortly after receiving this paper the complainants, treating it as a mere assignment, gave the usual

notice to George Moore & Sons, to the effect that the assignment had been made to them. In addition to this complainants deny that they ever demanded a formal acceptance on the part of defendants. What transpired, according to the weight of the evidence, was: Two representatives of complainants called on defendants and had a talk with Mr. Charles C. Moore, a member of the firm. The chief one of these witnesses and the strongest in his statements testified:

"Mr. Moore stated to us that the assignment was all right, and that the same would be paid as soon as he could get a settlement from the government for the work that was done on their contract on the post office at Jackson, Tenn. I asked Mr. Moore particularly if he owed George C. Anderson & Co. $1,000, and he stated that he owed them something more than $1,000, and that he was just simply waiting for the work to be approved by the inspector that the government had sent to Jackson. . . . He stated positively he would pay it as soon as he could get a settlement with the government."

The necessity requiring payment of other sums in order to complete the contract of G. C. Anderson & Co. developed after this conversation with the representatives of complainants, as a result of which there was nothing left or owing with which to pay the sum assigned.

5. The promise to pay, quoted, was not binding because not supported by any consideration.

6. The facts do not make out a case of novation.

We are of the opinion that the decree of the court of civil appeals, in favor of defendants, should, on the grounds we have stated, be affirmed, with costs.