# MURRAH v. SANFORD—245 S. W. (2d) 639.

Middle Section.   August 31, 1951.

Petition for Certiorari denied by Supreme Court, December 14, 1951.

Williams, Cummings & West, of Nashville, and Solon Fitzpatrick, of Carthage, for complainant.

S. N. Harwood and James A. Newman, both of Nashville, for defendant.

HOWELL, J. The bill in this case was filed by complainant M. T. Murrah against the defendant Miss Pearl Sanford and seeks to have set aside and declared null and void, a deed executed by complainant's mother, Mrs. Nannie Murrah, by which she conveyed to the defendant a house and lot 2611 Westside Avenue in Nashville.

The Chancellor found the facts in favor of the defendant and entered a decree dismissing complainant's bill and from this decree the complainant has appealed to this Court and has assigned errors.

The facts are that N. M. Murrah, the father of the complainant, died in Cheatham County, Tennessee, in 1919, leaving a will which was duly probated, in which he gave to his widow, the mother of complainant, a dwelling house at Pleasant View, Tennessee, and $500.00

in cash and he then said that it was his desire that the remaining money belonging to his estate be lent out or invested in land and that the family should live on the interest if possible and encroach on the principal if necessary. The will then provided that the widow should "have her living out of the effects of my estate". The wife was named as executrix of the will.

It is insisted by the complainant that under the will of his father, his mother became a Trustee for the benefit of herself and his father's family and that the property involved in this case was paid for with funds belonging to a trust, and his mother having died in 1949 the title to the property passed to him as the only surviving child.

The property in question was bought by complainant's mother on September 28, 1928, and title was taken in her individually, the consideration stated being $4,500.00, of which $1,500.00 was paid in cash and a $3,000.00 note secured by a mortgage was assumed. The complainant was of age and lived with his mother and knew the title to the property was taken in his mother's name individually. He continued to live with her in this house until 1946 when he moved away from Nashville. The record does not disclose what the mother received from the sale of the house and lot at Pleasant View which was given her absolutely by the will or just when it was sold.

In February 1946 the defendant Miss Pearl Sanford, a nurse, went to live with Mrs. Murrah and remained with her until she died. On July 10, 1948, Mrs. Nannie Murrah executed a deed by which she conveyed the property in question on Westside Avenue to Miss Pearl Sanford for the stated consideration as follows: "For and In Consideration of the sum of $1.00 paid to me in cash by Miss Pearl Sanford, and for further valuable considerations received by me from her through her

services heretofore rendered me by her, and yet to be rendered to me by her, in my home, and in caring for me generally as my attendant; and in consideration of the further agreement on her part to continue residing with me in my home, and caring for me as such attendant for and during my natural life."

In addition to this, the deed contains the following express provisions by which the conveyance would become void in the event of grantee's failure to perform her obligations as stated in the deed: "Upon the death, the absolute title to said parcel of land shall vest in the said Miss Pearl Sanford, her heirs and assigns, provided, only in the event the conditions herein expressed are faithfully carried out and performed by her. If the said Miss Pearl Sanford shall neglect, fail, or refuse, to continue residing with me in my home, and caring for me generally as such attendant for and during my natural life, and up to and including the time of my death, then this deed of conveyance shall become null and void, and the title to said parcel of land shall revert to me absolutely, and in fee simple."

Mrs. Murrah also executed a will on the same day, July 10, 1948, under which she gave the property involved to Miss Sanford.

There is no charge of fraud on the part of the defendant in securing the deed from Mrs. Murrah and no allegation that the consideration was inadequate or that Miss Sanford did not fully carry out her obligations as to living with and caring for Mrs. Murrah for the remainder of her life.

The complainant's mother with his knowledge bought the property in question taking title in her own name individually and claimed to own it, and complainant

lived with her in this house for eighteen years and made no claim to any interest in it.

■ The defendant in good faith performed her part of the agreement with Mrs. Murrah without any notice or intimation that complainant had any interest in the property and complainant cannot be heard now to say that defendant's title is not good. Under the facts of this case we do not think the Chancellor erred in not construing the will of N. M. Murrah or in not passing upon the question of the Statutes of Limitations. The record does not affirmatively show that the property was not paid for with funds belonging to the mother individually.

■ ■ We are of the opinion that the Chancellor properly applied the rule of law set out in the case of Fowler v. Tankersley, 32 Tenn. App. 264, 222 S. W. (2d) 395, 397. In that case this Court said:

"It is obvious therefore that by his bill in this case the complainant seeks to repudiate the representations he made to the defendant, on the strength of which the latter purchased the property. This, equity will not permit, because to do so would be to sanction unconscionable conduct and allow the complainant, whose representations were responsible for the transaction, relief at the expense of the defendant who was altogether innocent. Pomeroy's Eq. Jur., Vol. 2, Secs. 807, 809 and 821; Galbraith v. Lunsford, 87 Tenn. 89, 9 S. W. 365, 1 L. R. A. 522.

"It is true, that with reference to estates in land the doctrine which prohibits the owner from asserting his legal title by reason of his acts in pais is to be carefully applied. This, because it is opposed to the letter of the statute of frauds; but the jurisdiction of a court of equity within proper limitations to administer the doc-

trine in such cases is well settled. It may be applied wherever by intentional misrepresentations, misleading conduct or wrongful concealment, a person interested in an estate has misled another into dealing with it as if he were not interested. 2 Pomeroy's Eq. Juris., Secs. 807 and 821. Galbraith v. Lunsford, supra; Electric Light & Power Co. v. Bristol Gas, etc., Co., 99 Tenn. 371, 42 S. W. 19. It is sometimes said that actual fraud must be present before an estoppel can be set up against the owner of the legal title to land. But this is inaccurate. As used in this connection, the term 'fraud' is virtually synonymous with 'unconscientious' and 'inequitable'. It consists of the effort to repudiate conduct by which the other party has been induced to act.''

The Chancellor found also that: ''The defendant rendered services to Mrs. Murrah prior to the execution of the deed in 1948, and, pursuant to her agreement contained therein, said defendant rendered services thereafter and until the death of Mrs. Murrah. Had the complainant made known his claim to the property, the defendant could have made some other agreement or refused to have rendered further services. The failure on the part of complainant to take any steps to have the title changed led the defendant to rely on title being in Mrs. Murrah. To set the deed to her aside would occasion a loss to the defendant because of a failure on the part of complainant to assert his interest, if any he had, and his negligence in acquiescing in the record title, which remained in his mother's name for more than twenty years. There was nothing in the record title to put defendant on notice of complainant's, or any other, claim, and as far as this record shows she was an innocent purchaser for value.''

■ We concur with the Chancellor in the finding of facts and conclusions of law.

The assignments of error are overruled and the decree of the Chancellor dismissing complainant's bill is affirmed.

The appellant and his sureties will pay the costs of the appeal.

Affirmed.

Felts and Hickerson, JJ., concur.