# COMMERCE UNION BANK v. ROY E. BLALOCK, JR., et al.—273 S. W. (2d) 487.

Middle Section. June 25, 1954.

Petition for Certiorari denied December 17, 1954.

William C. Sugg and Lowe Watkins, both of Nashville, for appellant.

R. C. Boyce, Jr., of Nashville, Francis H. McAnaney, of New York City, for appellees.

FELTS, J.   This suit was brought by complainant bank to recover on a note for $13,000 for money lent by it to defendants Roy E. Blalock, Jr., and A. O. Newberry, partners doing business under the name A & B Construc-

tion Company, and to recover the amount of an estimate for work done by them for Kerby Saunders, Inc., and assigned by them to the bank as collateral security to their note.

They were a subcontractor of Kerby Saunders, Inc., and the latter was a subcontractor of Hardaway Contracting Company, which was the general contractor constructing for the Government the Arnold Engineering Development Center at Tullahoma. Each of them was to be paid at the end of each month on an estimate of the amount of work done by him during that month.

The partners needed money to enable them to go on with the work, and they sought to borrow $13,000 from the bank by assigning a mid-month estimate to the bank as collateral security. On October 15, 1951 they and Kerby Saunders, Inc., prepared an estimate called an interim application for payment of $16,168.66 for work done by them on the project.

This paper set out calculations showing that the value of the work done by them between September 22 and October 15, 1951, was $19,021.95, less 15%, or $2,853.29, retained by Kerby Saunders, leaving $16,168.66 as the sum to be paid on that estimate. This paper concluded as follows:

"This interim application is assigned to Commerce Union Bank, Nashville, Tenn. for value received and is irrevocable.

"A & B Construction Company

"By A. O. Newberry (signed)

"Approved for payment

"Kerby Saunders, Inc.

"By J. N. Scanlon (signed)

"V.P."

The bill alleged that the bank declined to make the loan on this assignment; that thereafter Kerby Saunders, Inc., induced the bank to make the loan by representing that the work had been done and more than $13,000 would be paid therefor, and by promising that whatever was paid to Kerby Saunders would in turn be paid by it to the bank under the assignment.

So it was alleged that Kerby Saunders, in addition to being the obligor in the chose assigned, was liable on its promise to the bank and was estopped by its representations to deny its liability to the bank for the amount paid it on the estimate.

The partners made no defense to the suit on the note, but suffered a pro confesso to be entered against them. Kerby Saunders, Inc., filed an answer in which it denied that it guaranteed payment of the note to the bank or was liable to the bank in any sum; and it alleged that the partners, its subcontractor, had incurred bills for labor and materials in excess of the amount of the estimate, which bills it was required to pay under the terms of its contract with the Hardaway Contracting Company.

The Chancellor found that Kerby Saunders, Inc., had made no guarantee to the bank that the note would be paid; and that Kerby Saunders was not liable to the bank under the assignment because, by the terms of its contract with the prime contractor, it had been required to pay bills of its subcontractor, Blalock and Newberry, in excess of the amount that would have otherwise been payable under the estimate.

He accordingly entered a decree against Blalock and Newberry on the note for $13,000, plus interest and attorneys' fees, totaling $16,096.75 and the costs; and he dismissed the bill as to Kerby Saunders, Inc., but reserved

the question, as between it and its subcontractor, ''which may be indebted to the other upon net balance under the contract.''

Complainant bank appealed and has assigned a number of errors through which it submits these two main contentions:

(1) That even if the case be viewed as nothing but a conventional assignment, Kerby Saunders, Inc., is nevertheless liable, as obligor, to the bank under the assignment, because it received $16,168.66 on the estimate assigned to the bank, and it failed to prove its right to this fund—failed to establish its counterclaims against the assignor, or to show that the assignor owed it anything.

(2) That the proof shows that this case was more than an ordinary assignment; that, in addition to being the obligor in the chose assigned, Kerby Saunders, Inc. bound itself by its own promise to the bank to pay the bank whatever was paid it on the estimate, and, by its representations, estopped itself to deny its liability to the bank for the amount it received on the estimate.

There is little or no dispute as to the facts. As stated, this estimate was made October 15, 1951, but the assignment and the loan were not made until October 25, 1951. On that day Mr. Scanlon, vice president of Kerby Saunders, Inc., came to the bank, talked to its vice president Williamson, and induced the bank to take the assignment and make the loan of $13,000 to Kerby Saunders' subcontractor, Blalock and Newberry.

At that time Blalock and Newberry owed Kerby Saunders $1,667.51 for bad checks it had taken up for them to meet their payroll. It was repaid this sum out of the proceeds of this $13,000 loan. The rest of the money was used to pay for labor and materials on the job.

Blalock and Newberry continued doing this work until November 21, 1951, the day after their note for $13,000 came due, and they quit or "resigned from the job" that day.

It is undisputed that the general contractor paid Kerby Saunders $16,168.66, the full amount of the estimate which was assigned to the bank by Blalock and Newberry to secure their note for $13,000, and which was "approved for payment" to the bank by Kerby Saunders. It is also undisputed that nothing has been paid to the bank either on the note or under the assignment.

■ Treating the case as an ordinary assignment, and nothing more, defendant Kerby Saunders, the obligor, would have a right to assert by cross-action any equities between itself and the assignor which have attached to the demand in the hands of the assignee, complainant bank, and for which Kerby Saunders would be entitled to a recovery against the assignor, its subcontractor, Blalock and Newberry. Hight v. McCulloch, 150 Tenn. 117, 128, 263 S. W. 794, 797, 798; Ahrens & Ott Mfg. Co. v. George Moore & Sons, 131 Tenn. 191, 174 S. W. 270.

■ But Kerby Saunders' counterclaims to the chose or fund in the hands of the assignee, based on equities or debts it claims to hold against the assignor, are in the nature of cross-actions, and the burden of proof is upon Kerby Saunders to establish such claims as valid debts owing to it by the assignor on a final accounting under their subcontract. Union & Planters Bank & Trust Company v. Linden Street Christian Church, 3 Tenn. App. 540, 551; Hight v. McCulloch, supra; Peters v. Goetz, 136 Tenn. 257, 264, 188 S. W. 1144, 1146; Gibson's Suits in Chy. (4th Ed.), Secs. 441, 443, 457, 729 (note 29).

■ Kerby Saunders failed to carry this burden. It did

prove that it had paid labor and material bills for its subcontractor, Blalock and Newberry, totaling $21,505.30, but for all the record shows it owed them, under their subcontract, sums greatly in excess of that amount.

The proof on this point is vague and unsatisfactory; but it does show that for the work done up to October 15, 1951 Kerby Saunders would owe Blalock and Newberry the sum of the estimate, $16,168.66, plus the total retainage of 15% up to that time, $5,640.65, or a total of $21,809.31, which would be more than the total of $21,505.30 which it paid on their bills.

But they did not stop on October 15, but continued the work on the job until November 21, 1951. There is no showing of the value of the work done from October 15 to November 21, 1951 but it does appear that the value of the work from September 22 to October 15, 1951, a period of a little over three weeks, was in excess of $19,000. At the same rate the value of the work from October 15 to November 21, 1951 would doubtless be some $30,000.

So it well might be that Kerby Saunders would owe Blalock and Newberry over $50,000 under their subcontract, or more than the total amount of the estimate assigned to the bank and the amount paid by Kerby Saunders on their bills.

Newberry testified that he had tried to get a settlement with Kerby Saunders and believed such a settlement would show that it is still indebted to them in a considerable sum; and it was stipulated that Blalock's testimony would be substantially the same as Newberry's.

The proof affirmatively shows without dispute that there has been no accounting or final settlement between Kerby Saunders, Inc., and its subcontractor, Blalock and

Newberry; and as we have seen, the Chancellor reserved the question, as between it and its subcontractor, which may be indebted to the other upon net balance under the contract.

So, without showing that there had been a final accounting, and without proving that on a net balance under the contract Blalock and Newberry are indebted to Kerby Saunders, Inc., in the sums of its counterclaims, it cannot possibly establish its right against the assignee bank or justify its refusal to pay the bank the $16,168.66 received by it on the estimate.

But there is a still stronger reason for denying Kerby Saunders' claim to the fund and sustaining the bank's right to it under the assignment. In an ordinary conventional assignment, the assignor merely transfers his right against the obligor to the assignee. The obligor "is not even a party to the assignment transaction." 4 Corbin on Contracts, Sec. 895, p. 591.

But this case was more than an ordinary assignment, more than a mere transfer of the obligee's rights against the obligor to the assignee. Kerby Saunders, besides being obligor in the chose assigned, added its own direct promise and representations to the bank, and thereby induced it to make the loan which constituted a present and sufficient consideration for the promise, and which differentiates this case from Ahrens & Ott Mfg. Co. v. George Moore & Sons, supra, where there was no consideration for the promise. This conclusion is amply supported by the proof which was taken by both the parties and which is singularly free from conflict.

The evidence showed that the bank had made two or three previous loans in smaller amounts to Blalock and Newberry upon assignments of their estimates after

Kerby Saunders had accepted them and agreed to pay the bank the amount of each assignment.

On September 17, 1951 Kerby Saunders wrote a letter to Blalock and Newberry, which was quite long and need not be here quoted. The effect of it was that Kerby Saunders said it would not commit itself to approval of the subcontractor's estimates prior to their approval by the general contractor and would make no guarantee that the amount of the estimate would be received.

On October 1, 1951, Kerby Saunders wrote a letter to the bank enclosing a copy of the letter it had written to its subcontractor on September 17, and stated that, for the reasons set forth in that letter, it did not represent that the amount set forth in the subcontractor's estimate would be paid; and it asked the bank to confirm its understanding of the position of Kerby Saunders.

Accordingly the bank, acting through its vice president Robertson, wrote a letter to Kerby Saunders, on October 4, 1951, in which it said:

"* * * it is our understanding that you do not unequivocally guarantee payment of estimates submitted to you by A & B Construction Company, but where these estimates are assigned to us for small advances from time to time and where such have been approved and accepted by you for payment, *it is our understanding that you will, if and when disbursements are made upon these estimates, remit the proceeds to us.*" (Italics added.)

When the next estimate was submitted to the bank for a loan thereon, Mr. Robertson was away and Mr. Williamson declined to make the loan. Thereafter Mr. Scanlon came to the bank and had the conversation which resulted in the bank making the loan and accepting the assignment here involved.

There is little or no discrepancy among the witnesses as to what was said in this conversation by Mr. Scanlon to Mr. Williamson. Mr. Williamson testified that Mr. Scanlon stated that his company would not guarantee the note but would accept the assignment of the estimate; that Scanlon further said that the work had been done and had been inspected and approved and more than $13,000 would be paid on the estimate; and that whatever was paid to Kerby Saunders would be paid to the bank.

Mr. Newberry, who was present at this conversation, testified substantially as did Mr. Williamson; and it was stipulated that Mr. Blalock, who was also present at that conversation, would testify to substantially the same facts as Newberry did.

Mr. Scanlon testified he told Mr. Williamson that his concern would not guarantee the note or the loan but would accept the assignment. But on cross-examination he admitted he told Williamson that his understanding of the position of his company in accepting the estimate and in approving it for payment was substantially in accordance with the bank's understanding, as stated in Robertson's letter above quoted. He further admitted that he stated that the work had been done and that more than $13,000 would be paid on the estimate and his company "would pay that money over to the bank," when it got that money.

■ While the assignee of a non-negotiable chose in action ordinarily takes it subject to all the defenses which the obligor may have against the assignor, the obligor may preclude such defenses by making an absolute promise to pay the assignee in substitution of the assigned obligation, or may, by his representations, estop himself from raising such defenses. 2 Williston on Contracts

(Rev. Ed.), Sec. 432, pp. 1243, 1244; 4 Corbin on Contracts, Sec. 899, pp. 604, 606; 4 Am. Jur., Assignments, Sec. 96; McBride v. Ponder, Tex. Civ. App., 242 S. W. (2d) 253; United Finance Plan v. Parkview Drugs, Mo. App., 250 S. W. (2d) 181.

■ It is not necessary that the party, against whom an estoppel is alleged, should have intended to deceive; it is sufficient if he intended that his conduct should induce another to act upon it, and the other did rely and act upon it. Galbraith v. Lunsford, 87 Tenn. 89, 105, 9 S. W. 365, 1 L. R. A. 522; Saylor v. Trotter, 148 Tenn. 359, 367, 368, 255 S. W. 590; Fowler v. Tankersley, 32 Tenn. App. 264, 222 S. W. (2d) 395; Murrah v. Sanford, 35 Tenn. App. 347, 245 S. W. (2d) 639.

For these reasons we think that defendant Kerby Saunders, Inc., is liable to the bank for the $16,168.66, the amount it received on the estimate. The decree of the Chancellor is reversed and a decree will be entered here for complainant against Kerby Saunders, Inc., for that amount, together with interest from the date of the filing of the bill and all the costs of the cause.

Howell and Hickerson, JJ., concur.