THIRD NATIONAL BANK, Complainant-Appellant, v.
CAPITOL RECORDS, INC., Defendant-Appellee.
—445 S.W.2d 471.

Middle Section.  March 28, 1969.

Certiorari Denied by Supreme Court October 6, 1969.

Thomas C. Binkley, Nashville, for complainant-appellant.

Wirt Courtney, Nashville, for defendant-appellee.

PURYEAR, J. This suit was brought by the complainant bank to recover from defendant the sum of $4,000.00 loaned by it to one Robert E. Moncrief, a country and western singer and guitarist using the stage name of "Bobby Edwards."

Before making a loan to Moncrief, the complainant investigated the credit standing of Moncrief and found that his credit standing was not such as would justify making such a loan without requiring some security.

In response to a request for security, Moncrief offered to assign royalties earned by him pursuant to a certain recording and royalty contract made and entered into by and between himself and the defendant, Capitol Records, Inc.

Thereupon Mr. Joe Diehl, Jr., a loan officer of complainant bank, sought information about Moncrief's royalty account from one Paul Wyatt, a Nashville representative of the defendant. Mr. Wyatt told Diehl that

he did not know exactly how much was in Moncrief's royalty account, but said he felt it was well above $4,000.00, because Moncrief had made at least two good records.

However, at the same time, Wyatt suggested to Diehl that he seek more accurate information from defendant's home office in Hollywood, California.

Complainant then took an assignment of royalties from Moncrief, which assignment is as follows:

"FOR AND IN CONSIDERATION of the sum of One ($1.00) Dollar cash in hand paid by the Third National Bank in Nashville, the receipt of which is hereby acknowledged, and for the purpose of enabling the undersigned to obtain credit and loans from the Third National Bank in Nashville, now, therefore, in order to secure and make certain the payment of any present indebtedness promptly when due, together with all future indebtedness, loans or other extensions of credit, I, Robert Edward Moncrief, known as Bobby Edwards, do hereby sell, assign, transfer and set over unto the Third National Bank in Nashville, of Nashville, Tennessee, all sums of money and claims for money due or to become due the undersigned from the Capitol Records, Inc., 1750 Vine Street, Hollywood, California, its successors or assigns, under my contract with it for recordings.

This is an absolute assignment of all money and claims for money due or to become due the undersigned from Capitol Records, Inc., its successors or assigns, under my said contract with it, and the Capitol Records, Inc. is hereby authorized and directed to make all payments, as they become due, direct to the Third National Bank in Nashville, Nashville 3, Tennessee.

IN WITNESS WHEREOF, I, Robert Edward Moncrief, known as Bobby Edwards, have executed this assignment in duplicate on this the 27 day of March, 1962.

/s/ Robert E. Moncrief
_____
Robert Edward Moncrief."

(Notary Public's
Acknowledgement not copied)

(Rec. P. 120)

Thereafter, the following correspondence was exchanged between complainant and defendant:

"March 23, 1962

Capitol Records, Inc.
1750 Vine Street
Hollywood, California

Dear Sirs:

Through Mr. Paul Wyatt of your Nashville Office, I am sending you an Assignment of royalties on Robert Edward Moncrief, known as Bobby Edwards. The original Assignment was properly signed by Mr. Moncrief and notarized and is being held at our bank. The enclosure is a duplicate for your files. If you would acknowledge this Assignment by a letter addressed to Third National Bank, I would appreciate it.

The loan which this Assignment is to secure is in the amount of $4,000. I would also like a statement in your acknowledgement letter stating approximately what Mr. Moncrief's royalties will be in July, 1962, or stating that more than $4,000 is due him if that be the case.

Mr. Moncrief is anxious to negotiate this loan and a prompt reply will be appreciated by both the bank and Mr. Moncrief.

> Yours very truly,
> /s/ W. Joe Diehl, Jr.
> Assistant Vice President."

(Rec. p. 84)

"April 9th 1962

Mr. W. Joe Diehl, Jr.
Assistant Vice President
Third National Bank
Nashville 3, Tennessee

Dear Sir:

In reply to your letter of March 23, 1962, please be advised that we hereby acknowledge receipt of the Assignment executed by Mr. Moncrief of all monies due or to become due from Capitol Records, Inc. to Mr. Moncrief under his contract with Capitol Records, Inc., being Capitol's Contract 3238.

From the royalties received to-date we expect to have available to Mr. Moncrief in excess of $4,000.00 for the accounting period ending June 30, 1962. However, the amounts which will be on deposit will depend, naturally, upon the sales of records and are therefore subject to the whims of the buying public. I hope the foregoing will be sufficient for your purposes.

> Yours very truly,
> CAPITOL RECORDS, INC.
> By Gerald S. Barton
> Attorney."

194

(Rec. p. 85)

After the foregoing exchange of correspondence the loan to Moncrief was closed by the bank.

The royalties which would have been earned under Moncrief's contract for the period beginning January 1, 1962, and ending June 30, 1962, would have been payable to him, according to the contract, within sixty days after June 30, 1962, the latter mentioned date being the end of an accounting period.

Whenever records were made by Moncrief at the defendant's studio, certain recording costs were incurred which consisted principally of fees paid to musicians who provided background music.

These recording costs were paid by defendant, but later deducted from Moncrief's royalties according to provision four of Moncrief's contract, which provides as follows:

"As to any performances by me hereunder during a period as to which my compensation is to be based on royalties I agree that Capitol may engage in my behalf vocalists, musicians, arrangers (including 'sketchers') and copyists selected by Capitol, in connection with such performances, and I authorize Capitol to pay each and all of the aforesaid on my behalf. All such payments shall be deemed additional non-returnable advances to me and shall be deducted from the total royalties payable to me by Capitol under this or any other agreement."

(Rec. p. 86)

During the accounting period from January 1, 1962, to June 30, 1962, such recording costs amounted to more

than the royalties earned on records made by Moncrief and sold during that accounting period and complainant was so advised by the following letter:

"October 16th 1962

Third National Bank
Nashville 3
Tennessee

Attention: W. Joe Diehl, Jr.,
Assistant Vice President

Gentlemen:

Our Accounting Department has advised me that as of June 30, 1962, no monies were due and owing Mr. Moncrief as royalties.

Recording costs presently exceed royalties which have been earned to date. However, the assignment sent us in April of 1962 has been noted and as monies accrue to Mr. Moncrief, they will be forwarded to you in accordance with the terms of our contract with him and your assignment.

Yours very truly,

CAPITOL RECORDS, INC.

By /s/ Gerald S. Barton
Gerald S. Barton
Attorney."

(Rec. p. 142)

However, royalties in the sum of $230.00 which were earned by Moncrief and payable in accordance with the contract after the accounting period ending June 30, 1962, were paid to the complainant bank on or about May 31, 1963, but no more royalties were paid to the bank.

Moncrief failed to make payment of the loan and a personal judgment was obtained against him in the Circuit Court of Sumner County, Tennessee, which judgment remains unsatisfied.

On July 23, 1965, this suit was filed to collect the sum of $4,000.00 from defendant. The twofold theory upon which complainant seeks to hold defendant liable for $4,000.00 is as follows:

(1) That the defendant made a direct promise to pay complainant in substitution for the assigned obligation.

(2) That the defendant, by its representations and conduct, estopped itself from deducting recording costs from royalties earned on sales of records pursuant to the recording and royalty contract.

The case was tried upon depositions and the Chancellor dismissed the suit, as a result of which complainant has prayed and perfected this appeal and assigned as error the Chancellor's findings that:

(1) The correspondence between the parties did not enlarge or vary the rights of complainant acquired under the terms of the assignment and that complainant received all payments to which it was entitled under the assignment contract.

(2) The only royalties to which Moncrief was entitled had been paid to appellant pursuant to the assignment contract.

After a consideration of the evidence and the law applicable thereto we have concluded that the Chancellor reached a correct result in the case and that the assignments of error must be overruled.

Of course, it is the general rule that the assignee of a non-negotiable chose in action ordinarily takes it subject to all the defenses which the obligor may have against the assignor, but the complainant insists that the facts and circumstances of this case bring it within the exceptions to the general rule, which exceptions were applied by this Court in Commerce Union Bank v. Blalock, 38 Tenn.App. 260, 273 S.W.2d 487 (1954).

The letter from Capitol Records to Mr. Diehl dated April 9, 1962, does not contain a promise of any sort. Actually, it was nothing more than an optimistic forecast of net earnings coupled, furthermore, with a note of caution.

This is one feature which distinguishes the instant case from Commerce Union Bank v. Blalock, supra, wherein this Court held that the obligor in an assigned contract had not established its right to make certain deductions from the assigned funds.

In the Blalock case, certain subcontractors of the defendant, Kerby Saunders, Inc., sought to borrow $13,-000.00 from the bank by assigning a mid-month estimate to the bank as collateral security.

On October 15, 1951, the subcontractors and Kerby Saunders, Inc., prepared an estimate called an interim application for payment of $16,168.66 for work done by the subcontractors on a certain construction project.

This paper set out calculations showing that the value of the work done by the subcontractors between September 22nd and October 15, 1951, was $19,021.95, less fifteen percent, $2,853.29, retained by Kerby Saunders, leaving $16,168.66 as the sum to be paid on that estimate. This paper concluded as follows:

' "This interim application is assigned to Commerce Union Bank, Nashville, Tenn. for value received and is irrevocable.

'A. & B. Construction Company

'By A. O. Newberry (signed)

'Approved for payment

'Kerby Saunders, Inc.

'By J. N. Scanlon (signed)

'V.P.' " '

Commerce Union Bank v. Blalock, p. 262, 273 S.W.2d p. 489

The following excerpts from the opinion in the Blalock case also serve to show how that case is distinguishable from the case at bar:

"There is little or no dispute as to the facts. As stated, this estimate was made October 15, 1951, but the assignment and the loan were not made until October 25, 1951. *On that day Mr. Scanlon, vice president of Kerby Saunders, Inc., came to the bank, talked to its vice president Williamson, and induced the bank to take the assignment and make the loan of $13,000 to Kerby Saunders' subcontractor, Blalock and Newberry.*" (Emphasis supplied)

Supra, p. 264, 273 S.W.2d p. 489

\* \* \* \* \* \*

"It is undisputed that the general contractor paid Kerby Saunders $16,168.66, the full amount of the estimate which was assigned to the bank by Blalock and Newberry to secure their note for $13,000, and

which was 'approved for payment' to the bank by Kerby Saunders. It is also undisputed that nothing has been paid to the bank either on the note or under the assignment.''

Supra, p. 265, 273 S.W.2d p. 490

\* \* \* \* \* \*

''But there is still stronger reason for denying Kerby Saunders' claim to the fund and sustaining the bank's right to it under the assignment. In an ordinary conventional assignment, the assignor merely transfers his right against the obligor to the assignee. The obligor 'is not even a party to the assignment transaction.' 4 Corbin on Contracts, sec. 895, p. 591.

But this case was more than an ordinary assignment, more than a mere transfer of the obligee's rights against the obligor to the assignee. Kerby Saunders, besides being obligor in the chose assigned, *added its own direct promise and representations to the bank, and thereby induced it to make the loan which constituted a present and sufficient consideration for the promise,* and which differentiates this case from Ahrens & Ott Mfg. Co. v. George Moore & Sons, supra [131 Tenn. 191, 174 S.W. 270], where there was no consideration for the promise. This conclusion is amply supported by the proof which was taken by both the parties and which is singularly free from conflict.'' (emphasis supplied)

Supra, p. 267, 273 S.W.2d p. 491

\* \* \* \* \* \*

''There is little or no discrepancy among the witnesses as to what was said in this conversation by Mr. Scanlon

to Mr. Williamson. Mr. Williamson testified that Mr. Scanlon stated that his company would not guarantee the note but would accept the assignment of the estimate; that Scanlon further said that the work had been done and had been inspected and approved and more than $13,000 *would be paid on the estimate;* and that whatever was paid to Kerby Saunders would be paid to the bank.

Mr. Newberry, who was present at this conversation, testified substantially as did Mr. Williamson; and it was stipulated that Mr. Blalock, who was also present at that conversation, would testify to substantially the same facts as Newberry did.'' (emphasis supplied)

Supra, p. 269, 273 S.W.2d p. 491

This Court, speaking through Judge Felts, also said in the Blalock case that the defendant, Kerby Saunders, would have a right to assert by cross-action any equities between itself and the assignor which attached to the demand in the hands of the assignee, complainant bank, and for which Kerby Saunders would be entitled to a recovery against the assignor, its subcontractor, Blalock and Newberry, and the burden of proof was upon Kerby Saunders to establish such claims as valid claims owing to it by the assignor on a final accounting under their subcontract.

However, this reasoning is not applicable to the case at bar since the defendant, Capitol Records, is not an assignor, as was Kerby Saunders in the Blalock case, and also for the further reason that, in the Blalock case the amount assigned was accrued and payment thereof had been approved by Kerby Saunders prior to assignment thereof, whereas, in the instant case, it is not even insisted

that the $4,000.00 which complainant seeks to recover herein would have been accrued and payable until after June 30, 1962, that being the end of an accounting period.

Even if the rule regarding estoppel stated in the Blalock case should be applied here, it would not change the result reached by the trial Court, since a preponderance of the evidence in the record shows that on June 30, 1962, Moncrief owed defendant an amount for recording costs paid by defendant on his behalf which was in excess of royalties due him at that time.

Complainant cites the following quotation from Corbin on Contracts:

"The doctrine of equitable estoppel may prevent an obligor from setting up defenses and counterclaims as against an assignee. To create such an estoppel, the obligor must have so conducted himself as to induce the assignee to believe that the defense or counterclaim that is later asserted did not exist and to change his position materially in reasonable reliance thereon. Also the obligor must have had reason to foresee such change of position in reliance."

4 Corbin on Contracts, Sec. 899, pp. 604-606

The foregoing rule would not apply to the case at bar, because there is not sufficient evidence in the record to justify a conclusion that any representative of defendant conducted himself in such a manner as to induce complainant to believe recording costs did not exist or would not be deducted from royalties accrued at the end of the accounting period.

There is simply no proof in the record, one way or the other, to show that complainant made any inquiry about

authorized deductions from royalties or that the defendant made any representations about such. The burden of establishing estoppel is upon the one who invokes it. Edwards v. Central Motor Co., 198 Tenn. 50, 277 S.W.2d 417 (1955); Balderacchi v. Ruth, 36 Tenn.App. 421, 256 S.W.2d 390 (1953).

In addition, there is the paragraph in the recording and royalty contract which authorizes and provides for deduction of such costs. It appears from the record that no representative of complainant made inquiry about the terms of Moncrief's contract with defendant and it further appears that no representative of complainant knew the provisions thereof.

Complainant has no right to rely upon its lack of knowledge of the terms and provisions of the contract, an assignment of which it accepted as collateral. It is strange indeed that the assignment of such contract would be accepted as collateral security for a loan without some representative of complainant seeing the contract and ascertaining the provisions thereof.

The complainant, bank, took the assignment of such contract subject to all of the provisions thereof including provision four which authorized the defendant to deduct such recording costs from royalties earned by Moncrief.

It was entirely reasonable for the defendant to assume that complainant's representatives had ascertained the provisions of the contract, which was being accepted as collateral security for the loan and, consequently, there was no reason for the defendant to call complainant's attention to provision four thereof.

There is no evidence in the record from which it could be inferred that the defendant waived its right to rely upon provision four of the contract and therefore, the defendant has not been estopped from deducting recording costs from the royalties earned by Moncrief under the terms of the contract.

The assignments of error are respectfully overruled and the judgment of the trial Court is affirmed. The appellant will pay the costs of this appeal.

Shriver, P. J. (M.S.), and Todd, J., concur.