Mary Ann ROWLAND, Appellee,

v.

AMERICAN FEDERAL SAVINGS & LOAN
ASSOCIATION, Appellant.

Court of Appeals of Tennessee,
Western Section.

Jan. 15, 1975.

Certiorari Denied by Supreme Court
May 12, 1975.**

** On Petition for Writ of Certiorari, the
Supreme Court of Tennessee entered the fol-
lowing order, dated May 12, 1975:
   "ORDER DENYING PETITION FOR
     WRIT OF CERTIORARI
Upon consideration of the petition, the briefs
of counsel and the entire record, the Court is
of the opinion that the Court of Appeals
reached the correct results.
  We accordingly deny the writ and direct
the publication of the opinion of that Court.
                PER CURIAM"

Rice & Rice, Jackson, for appellant.

Melvin L. Rowland, Pierce Winningham, Jr., Jackson, for appellee.

MATHERNE, Judge.

The Honorable W. E. Quick, by appointment of the Chief Justice of the Supreme Court of Tennessee, sat on this lawsuit in the place of Presiding Judge C. S. Carney.

One Ellis Maness owned an interest bearing deposit with the defendant, which deposit he assigned to the plaintiff. Upon demand by the plaintiff assignee, the defendant obligor refused to pay to her the amount of the deposit. The plaintiff sues for that amount.

Each party filed a motion for summary judgment and an affidavit in support thereof. The chancellor dismissed the motion of the defendant, sustained the motion of the plaintiff and entered judgment against the defendant for the amount of the deposit, $2,128.99, plus interest thereon from March 9, 1973. The defendant appeals to this Court.

The record reveals that James L. Chrisman attempted to borrow $12,000 from the defendant. The defendant would advance only $10,000 to Chrisman. In order to aid Chrisman to obtain the full amount of $12,000, Ellis Maness placed on deposit with the defendant the sum of $2,000, and executed a written pledge agreement in favor of the defendant whereby he pledged the account to secure the payment of the Chrisman loan to the extent the amount of the loan exceeded the sum of $10,000. This transaction occurred on January 26, 1965.

On about October 28, 1969, Maness made a written assignment of the above account to the plaintiff. By letter dated February 6, 1970, the plaintiff, through her father and attorney, notified the defendant of the assignment made to her by Maness, and requested the account be converted to such an account as would draw the highest rate of interest. The defendant answered by letter dated February 26, 1970 that it could not accept the assignment to the plaintiff until the pledge of the account to 'it was satisfied, which should occur within approximately 36 months.

It appears Ellis Maness died, and by letter dated March 6, 1972, the plaintiff's attorney again wrote the defendant reminding it of the assignment of the Ellis Maness account to the plaintiff. By letter dated March 13, 1972, the defendant, by its counsel, answered this last reminder, which letter states in part as follows:

"Account #1135 in the individual name of Ellis Maness has a balance as of December 31, 1971 of $2,075.16. This account was pledged to American Federal Savings and Loan Association of Jackson on January 26, 1965 to secure a loan to James L. Chrisman. Mr. and Mrs. Chrisman desired to make a $12,000. loan from American Federal, but the Association was unwilling to loan this amount nor any amount above $10,000. Mr. Maness executed this assignment in order to induce the Association to make a $12,000. loan to Mr. and Mrs. Chrisman, and by the terms of the assignment when the unpaid balance of the Chrisman loan goes beneath $10,000, the assignment can be released. I am advised that this will occur in about eleven months if all payments are made when due.

"In the meantime we remind you that due to the existing assignment, the Association has not accepted your assignment, nor do we do so now. When the account of Mr. Chrisman reaches $10,000. we will advise you and the estate of Mr. Maness, and if the two of you are unable to agree as to how this matter should be handled, we will place this matter in the Chancery Court by interpleader and your claim and the claim of the estate can then be settled in the proper tribunal."

On October 6, 1972, the Chrisman loan was paid in full, and all terms and conditions of the original deposit and the pledge thereof were satisfied. The defendant did not notify the plaintiff assignee of this payment. On April 19, 1973, the plaintiff made personal demand of the defendant that the amount of the Maness account be paid to her, and presented proof of the account and the assignment thereof. The defendant refused to pay the amount of the account to the plaintiff.

The reason given by the defendant for its refusal to honor the plaintiff's assignment is that it had, in a lawsuit in the Chancery Court of Maury County, Tennessee, in the cause of American Federal Savings and Loan Association vs. Robert D. Holder, et al, No. 12341, obtained judgment dated December 20, 1972, against Travis J. Maness, Executor of the Estate of Ellis Maness, deceased, in the amount of $3,900. The defendant offset the account of Maness against the judgment.

The background of the Chancery lawsuit in Maury County, Tennessee, involves a se-' ries of events totally unrelated to the transaction which resulted in the account of Ellis Maness with the defendant, and the assignment thereof to the plaintiff. That lawsuit grew out of the following factual situation as recited in the defendant's affidavit and supporting exhibits:

On September 22, 1967, Robert D. Holder, et ux sold some land to Robert R. Chapman, et ux. The Chapmans borrowed $19,000 from the defendant and gave a deed of trust on the property as security. In fact there was a prior recorded deed of trust on the same property which secured a note payable to Ellis Maness in the amount of $3,500 plus interest, dated December 30, 1966. In order to avoid foreclosure by Ellis Maness, and to protect its security on its loan to Chapman, the defendant did on October 4, 1968, purchase the Holder note from Maness. On August 19, 1970, the defendant filed the chancery lawsuit in Maury County against Holder on the warran-

ties in his deed to Chapman. The Holders pled they paid the debt to Peoples Protective Life Insurance Company, which concern had in turn paid the amount over to Ellis Maness. By amendment to its complaint, filed May 23, 1972, the defendant made Peoples Protective and the Executor of the Estate of Ellis Maness parties defendant. The executor of the estate of Ellis Maness did not plead, and a judgment pro confesso was entered against that defendant on October 24, 1972. On December 20, 1972, the chancellor entered his decree dismissing all defendants except the Executor of the Estate of Ellis Maness. As to that defendant, the chancellor decreed:

"It is further Ordered, Adjudged and Decreed that the Complainant, American Federal Savings and Loan Association of Jackson, Tennessee have and recover of Travis J. Maness, Executor of the Estate of Ellis Maness, deceased, judgment in the amount of Three Thousand Nine Hundred Dollars ($3,900.00), together with interest from and after October 4, 1968, same being the date upon which American Federal Savings and Loan Association of Jackson, Tennessee made the erroneous second payment of the note in issue to Ellis Maness."

It thus appears to have been finally adjudicated that the defendant did make a good faith purchase of the Holder note from Ellis Maness on October 4, 1968; and further, the defendant's purchase of the note from Ellis Maness constituted an erroneous second payment of the note to Ellis Maness.

We must conclude the defendant had a claim against Ellis Maness, in the amount it paid him for the Holder note, as of October 4, 1968. It is fairly established the defendant did not at that time realize it had a claim, and the defendant did not realize it had such claim until after the assignment of the account by Maness to the plaintiff, and after notice of assignment was given the defendant on February 6, 1970.

■ The statements in the letters of the defendant obligor that it did not accept the assignment are meaningless. The obligor has no choice about the assignment, and once the assignment is made and notice given it is effective.

■ The question is whether the assignment made by Ellis Maness to the plaintiff is subject to the counterclaim of the defendant obligor in the amount of the erroneous prior payment made by the defendant obligor to Ellis Maness in the purchase of the Holders note from Maness?

The plaintiff relies upon T.C.A. § 47–9–318, and argues that statute is merely declaratory of the case law of this state prior to its adoption. We hold that statute not applicable, because T.C.A. § 47–9–104(k) specifically excludes the assignment of a bank deposit from the provisions of T.C.A. §§ 47–9–101 through 47–9–507:

"47–9–104. *Transactions excluded from chapter.*—This chapter does not apply

(a) . . .

(k) to a transfer in whole or in part of any of the following: and [sic] claim arising out of tort; any deposit, savings, passbook or like account maintained with a bank, savings and loan association, credit union or like organization."

Case law under prior statutes is not conclusive, because Section 2918 of the Code of 1858, carried over to T.C.A. § 20–1001, sets out certain named and limited claims and equities which could be the subject of cross action and setoffs. T.C.A. § 20–1001 was repealed by Rule 13, Tennessee Rules of Civil Procedure, effective January 1, 1971. The situation at bar is covered by Rule 13.02:

"A pleading may state as a counterclaim any claim against an opposing party, whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."

Under Rule 13.02, the defendant obligor could assert a counterclaim against Ellis Maness in the amount of the payment to Maness for the Holder note. The defendant's claim against the assignor Maness having risen on October 4, 1968, before the assignment to the plaintiff and before notice of that assignment, we conclude, with nothing more appearing, the defendant obligor has the right to counterclaim against the plaintiff assignee that amount so paid to the assignor Maness. This holding is in accord with the case law of this state, except as that case law was affected by the now repealed T.C.A. § 20–1001. See and compare: Hight v. McCulloch (1923) 150 Tenn. 117, 263 S.W. 794; Gatewood v. Denton (1859) 40 Tenn. 380; Litterer v. Berry (1879) 72 Tenn. 193; Kennedy v. Woolfolk (1817) 4 Tenn. 195; Breedlove v. Stump (1830) 11 Tenn. 257.

The fact the defendant obligor may not have known of the claim it had against the assignor Maness at the time of the notice of the assignment, would not defeat its right to counterclaim against the plaintiff assignee. See and compare: Ahrens & Ott Mfg. Co. v. Moore & Sons (1914) 131 Tenn. 191, 174 S.W. 270. This conclusion, though not governed by, is buttressed by Rule 13.05 which allows a counterclaim, with permission of the court, which arises or matures after pleading.

■ We must now determine if the defendant obligor by its acts and representations is estopped to rely upon the counterclaim as against the plaintiff assignee.

In Commerce Union Bank v. Blalock (1954) 38 Tenn.App. 260, 273 S.W.2d 487, this court, speaking through Judge Felts, held an obligor could be estopped from asserting certain defenses against an assignee. The Court there stated the case as follows:

"This suit was brought by complainant bank to recover on a note for $13,000 for money lent by it to defendants Roy E. Blalock, Jr., and A. O. Newberry,

partners doing business under the name of A & B Construction Company, and to recover the amount of an estimate for work done by them for Kerby Saunders, Inc., and assigned by them to the bank as collateral security to their note."

After a review of the factual situation involved, the court found:

"But this case was more than an ordinary assignment, more than a mere transfer of the obligee's rights against the obligor to the assignee. Kerby Saunders, besides being obligor in the chose assigned, added its own direct promise and representations to the bank, and thereby induced it to make the loan which constituted a present and sufficient consideration for the promise, and which differentiates this case from Ahrens & Ott Mfg. Co. v. George Moore & Sons [131 Tenn. 191, 174 S.W. 270] where there was no consideration for the promise."

On the issue of estoppel the court then held:

"While the assignee of a non-negotiable chose in action ordinarily takes it subject to all the defenses which the obligor may have against the assignor, the obligor may preclude such defenses by making an absolute promise to pay the assignee in substitution of the assigned obligation, or may, by his representations, estop himself from raising such defenses."

The court in *Commerce Union Bank* held the obligor Kerby Saunders estopped to assert against the assignee certain defenses it may have had against its subcontractor, the assignor, because by its conduct it intended to induce the assignee to act, and the assignee did rely on that conduct and act thereon.

The case at bar is distinguishable from the *Commerce Union Bank* case wherein here there were no representations made by the defendant obligor to the plaintiff assignee prior to the assignment upon which the assignee could have relied and acted.

The letters from the defendant obligor to the assignee; the failure to notify the assignee of the payment in full of the Chrisman note; the failure to notify the assignee of the lawsuit the obligor instituted against the assignor Maness in Maury County, cannot be deemed actions which estop the defendant obligor from asserting against the assignee those defenses it had against the assignor Maness. See and compare Third National Bank v. Capitol Records, Inc. (1969) 60 Tenn.App. 189, 445 S.W.2d 471.

It results, the decree of the chancellor is reversed, and this lawsuit is dismissed at the cost of the plaintiff-appellee.

NEARN, J. concurs.

W. E. QUICK, Special Justice concurs.