508 P.2d 752

The **VALLEY NATIONAL BANK OF ARIZONA**, a national banking association, Appellant,

v.

Edward **BROWN** and Lillian R. Brown, husband and wife, Appellees.

No. I CA–CIV 1813.

Court of Appeals of Arizona, Division 1, Department B.

April 10, 1973.

Rehearing Denied May 22, 1973.

Review Granted July 3, 1973.

**494**

Rawlins, Ellis, Burrus & Kiewit by Robert Gottsfield, Phoenix, for appellant.

Pain & Julian by Fred J. Pain, Jr., Phoenix, for appellees.

JACOBSON, Chief Judge, Division 1.

This appeal asks the court to determine the liability of a garnishee-defendant who, following the instructions of a judgment creditor, impounded funds belonging to an innocent third party.

Appellees-plaintiffs, Edward Brown and Lillian R. Brown, brought an action against the appellant-defendant, the Valley National Bank of Arizona, a national banking association (Bank); Union Guaranty Co., an Arizona corporation; that corporation's firm of attorneys and an individual attorney thereof, seeking damages for an alleged wrongful garnishment of funds deposited by plaintiffs in a savings account with the Bank. The matter was tried to a jury which returned verdicts in favor of the plaintiffs and against the Bank and the individual attorney jointly for $5,000.00.[1] Only the Bank has appealed the judgment entered on those verdicts.

The facts giving rise to this litigation are as follows. On October 16, 1964, Home Savings & Loan Association obtained a judgment foreclosing a realty mortgage against Claude V. Brown and Lillian R. Brown, husband and wife, which resulted in a deficiency in the sum of $1,670.74. This judgment was then assigned to Union Guaranty Co. for collection. Union Guaranty Co. turned the collection of this judgment over to its attorneys.

These attorneys hired an investigator to find assets and employments of various deficiency judgment debtors against whom it was seeking collections, among them being Claude V. Brown and Lillian R. Brown. On May 21, 1968, this investigator reported to the attorneys in writing that a Lillian R. Brown was employed at Merrigay Foods Corp., 426 East Jackson, Phoenix, Arizona, and resided at 353 East Thomas Road, also in Phoenix. In addition, this report indicated that Lillian R. Brown had a bank

---

1. Union Guaranty Co. was released prior to the case going to the jury on stipulation with plaintiffs.

account at the 7th Avenue and Thomas Road Branch of the Bank.

At the time of the delivery of the written report, the investigator also orally related to the attorneys that he had verified that the Lillian R. Brown named in the Home Savings & Loan Association litigation was the same Lillian R. Brown employed at Merrigay Foods Corp. This verification took the form of his calling a Lillian R. Brown at Merrigay Foods and advising her that he had a perishable package for Claude V. Brown or Lillian R. Brown and asked if the Mrs. Brown he was speaking to was the wife of Claude V. Brown. Upon receiving an affirmative reply to this inquiry, he gave Mrs. Brown an address where the package could be picked up. The investigator was at this address when the plaintiffs, Mr. and Mrs. Edward Brown, came to claim the package.

Based upon this information, the attorneys on May 21, 1968, caused a writ of garnishment to be issued against the Bank, pinpointing the 7th Avenue and Thomas Road Branch as having funds and naming Claude V. Brown and Lillian R. Brown as judgment debtors. This writ was served on May 21, 1968. In addition, these same attorneys caused a writ of execution to issue and be served at the address shown by the investigator's report. At the time the writ of garnishment and the writ of execution were served, the attorney handling this collection was convinced that the Lillian R. Brown named in the Home Savings & Loan Association litigation was the same Lillian R. Brown who was employed at Merrigay Foods and resided at 353 East Thomas Road. *In fact,* they were two different individuals.

Service of the writ on the branch office of the Bank resulted in ascertaining that there were two savings accounts, one in the joint names of Edward or Lillian R. Brown and one in the joint names of Lillian R. Brown or Yetta Perlman. After service of the writ of garnishment on the branch office, the writ, together with the pertinent information, was turned over to

Mrs. Pauline Peters, an officer at the home office of the Bank. Mrs. Peters had for 12 years been in charge of handling writs of garnishment against the Bank and preparing information upon which the Bank's attorneys could properly prepare answers to writs of garnishment. Upon receiving the writ and the information from the branch office, Mrs. Peters called the attorney representing the garnishment creditor. This call was made because the names of the judgment debtors on the writ were Claude V. Brown and Lillian R. Brown, whereas the names appearing on the savings account were (1) Edward or Lillian R. Brown and (2) Lillian R. Brown or Yetta Perlman. As a result of this telephone conversation, the attorney representing the judgment creditor advised Mrs. Peters that the Lillian R. Brown who was their judgment debtor, resided at 393 E. Thomas Road and was employed at Merrigay Foods. This information corresponded with the information contained on the signature card on the Bank's two savings accounts. Because of the coinciding of this information, Mrs. Peters was advised by the attorney to prepare an answer to the writ of garnishment and that he "wanted the funds held."

Mrs. Peters then relayed this information to the Bank's attorney but again expressed concern over the disparity of the names. Because of this concern, the Bank's attorney personally called the attorney for the judgment creditor and again verified that the information contained on the Bank's signature cards matched that obtained by the attorneys' investigator. Also, these attorneys by telephone attempted to identify signature characteristics of Lillian R. Brown contained on the signature card and the signature of the judgment debtor, Lillian R. Brown, appearing on documents in the attorney's possession. As a result of the telephone conversation, the Bank's attorney expressed doubts that the writ of garnishment had reached funds belonging to the Lillian R. Brown who was one of the judgment debtors and suggested to the attorney that the writ should be

quashed. The judgment creditor's attorney responded that "he would not release the writ and he was sure that this was the right person." The Bank's attorney then prepared an appropriate answer, and the Bank impounded $2,484.16 belonging to their depositor, Lillian R. Brown.

On May 23, 1968, a Maricopa County Deputy Sheriff, pursuant to a writ of execution, attempted to seize an automobile belonging to Lillian R. Brown located at 353 E. Thomas Road. This deputy, after talking to Mr. and Mrs. Edward Brown, called the attorney handling the collection and was advised not to seize the automobile. Mrs. Brown testified that this attorney then called her, stating he was sorry for the inconvenience and asked her several questions. This same attorney testified at trial that after the telephone conversation he still was not convinced that he had the wrong Lillian R. Brown and, therefore, did not advise the Bank to release the impounded funds held by it.

On May 24, 1968, the Bank by telephone call advised the depositor, Lillian R. Brown, that the funds held on deposit at the 7th Avenue and Thomas Road Branch of the Bank had been impounded pursuant to a writ of garnishment. This was verified by a letter from the Bank dated May 27, 1968. At the time of the telephone conversation of May 24, 1968, Mrs. Brown advised the Bank that there was a mistake and that they should call the judgment creditor's attorney and get the matter straightened out and demanded release of the funds.

The Bank had no further contact with this matter until June 4, 1968, when the Bank's attorney received a telephone call from the judgment creditor's attorney advising him to release the impounded funds and terminate the garnishment. This telephone call was verified by a letter of release received by the Bank on June 5, 1968, at which time the funds were released. These funds were subsequently withdrawn by the plaintiffs on June 7, 1968.

Based upon the foregoing evidence and the impounding of plaintiffs' funds for 15 days, the jury returned a verdict in the plaintiffs' favor and against the Bank for $5,000.00 damages.

On appeal, the Bank raises basically two issues:

(1) May a garnishee-defendant be liable for impounding the funds of an innocent third party depositor where such impoundment is pursuant to a writ of garnishment and instructions received from the garnishing creditor, and,

(2) If liable, what is the measure of damages?

Since we hold that the Bank must prevail on the first issue, we need not reach the second.

The plaintiffs' theory of liability against the garnishee-defendant bank in this case is based on tort (negligence). The theory is that the Bank, having evidence that the funds which it impounded stood in the names of Edward Brown and Lillian R. Brown, knew or should have known that these funds did not belong to the judgment debtors, Claude V. Brown and Lillian R. Brown. Having this knowledge, the theory continues, the Bank is liable after demand for release of the funds by plaintiffs, for negligently failing to make an adequate investigation of the facts to determine the true status of the conflicting claims of ownership to these funds. This theory is sound, if, but only if, the garnishee bank had a duty beyond the duty of exercising reasonable diligence to ascertain conflicting claims to determine at its peril the true ownership of funds on deposit with it. The Bank contends it owes no such duty and, hence, is not liable. We agree.

The duties evolving upon a garnishee after service of a valid writ of garnishment on it are several. Without attempting to list them exhaustively, the following duties bear on the issue before the court. *See,* Anno., Garnishment—Garnishee's Duty, 45 A.L.R. 646 (1926).

First, the garnishee is under a duty to follow the mandate of the writ served upon it. The failure of the garnishee to do so may subject it to liability for those injured by such failure. Valley Bank and Trust Co. v. Parthum, 47 Ariz. 496, 56 P. 2d 1342, reh. denied, 48 Ariz. 87, 59 P.2d 335 (1936).

Second, the garnishee is under a duty to make a full and complete disclosure of all the facts within its knowledge regarding its financial relationship with the alleged judgment debtor. Regan v. First National Bank of Arizona, 55 Ariz. 320, 101 P.2d 214 (1940); A.R.S. § 12–1579 (1956). In making this disclosure, the garnishee must be completely impartial and include any information, qualified or unqualified, which would leave in doubt whether the property or debt belongs to the principal defendant or to a third person. Edler v. Hasche, 67 Wis. 653, 31 N.W. 57 (1887). This knowledge and disclosure must be tested by the reasonable man standard. Anno., Garnishment—Garnishee's Duty, *supra.*

Third, the garnishee "shall not pay to defendant any debt or deliver to him any property" from and after service of the writ. Weir v. Galbraith, 92 Ariz. 279, 376 P.2d 396 (1962); A.R.S. § 12–1578 (1956).

Fourth, the garnishee is under a duty to advise all adverse claimants to the property or debt garnished of the pendency of the garnishment proceedings. Portland Ass'n of Credit Men, Inc. v. Earley, 42 Wash.2d 273, 254 P.2d 758 (1953).

■ The Bank in this case breached none of these enumerated duties. It was ordered by the writ of garnishment to impound the funds belonging to a Lillian R. Brown. Moreover, it was specifically directed by the judgment creditor to impound the particular funds that it did. It followed the mandate of that writ and the specific directions given and impounded funds belonging to a Lillian R. Brown. This it was authorized to do, even though the funds impounded stood in the names of joint tenants. A.R.S. § 12–1595 (1956). Before impounding those funds, it made

full disclosure to the judgment creditor of all the facts, including the possibility that the funds held by it may possibly belong to a third person. Finally, the Bank advised its depositor of the impounding of her funds both orally and by written communication.

There is no contention made that the Bank did not act as a reasonable and prudent bank both in ascertaining the existence of a possible conflict in ownership and in advising the claimant to those funds of this conflict. The plaintiffs, however, would go one step further and place upon the garnishee the duty of making, in essence, a judicial determination of the ownership of the funds on deposit with it and based upon that determination ignore either the mandate of the writ served or the claim of the adverse claimant.

■ To impose this duty of ascertaining, at its peril, whether the funds sought to be garnished truly belong to the judgment debtor would, in our opinion, destroy the status of a garnishee-defendant as an impartial stakeholder. As was stated in Valley Bank and Trust Co. v. Parthum, *supra*, where the writ of garnishment identified a particular account to be impounded:

"[w]e think it was the duty of the bank to treat the [account sought to be garnished] as *in custodia legis* until the court decided whose account it was. Such a course, it seems to us, was not only safe and sound from the bank's standpoint, but would have effected a correct and just end." 47 Ariz. at 500, 56 P.2d at 1343.

Moreover, we see no public policy reasons for placing the innocent garnishee in the untenable position of acting at its peril as an adjudicator of conflicting claims of property in its possession. If, in fact, the garnishing creditor wrongfully procures and directs the impounding of property or funds belonging to an innocent third party held by a garnishee, that party has an adequate remedy against the wrongdoer sounding in wrongful garnishment. Such a course was, in fact, followed here.

■ We therefore hold that where, pursuant to a valid writ of garnishment conflicting claims are made on a garnishee-defendant to funds or property held by the garnishee, the garnishee breaches no duty to the claimants by failing to ascertain the true ownership of those funds. Valley Bank and Trust Co. v. Parthum, *supra*. Having breached no duty to the plaintiffs in this case, it follows that the Bank cannot be held liable in negligence for any damages suffered by these plaintiffs.

The judgment against the Valley National Bank is reversed and the matter remanded with directions to enter judgment in its favor on plaintiffs' complaint.

EUBANK, P. J., and HAIRE, J., concur.