**MADDEN ENGINEERING CORPORATION et al.**

v.

**MAJOR TUBE CORPORATION et al.**

**RJR Archer, Inc., Cross-Defendant, Appellant,**

**Nassau Trust Co., Cross-Plaintiff, Appellee.**

Court of Appeals of Tennessee, Eastern Section.

Dec. 28, 1977.

Rehearing Denied Feb. 14, 1978.

Certiorari Denied by Supreme Court July 10, 1978.

N. R. Coleman, Jr., Greeneville, for appellants.

Harold B. Stone, Anna F. Hinds, Knoxville, for appellees.

## OPINION

GODDARD, Judge.

RJR Archer, Inc., Cross-Defendant, Appellant, appeals a judgment in the sum of $78,200.20 rendered against it in favor of Nassau Trust Company, Cross-Plaintiff, Appellee, upon the Chancellor's finding that Archer failed to honor an assignment executed by Major Tube Corporation in favor of Nassau.

Archer insists that the Trial Court erred in not allowing it certain credits and setoffs against the assignor, Major Tube, and that the Chancellor's findings on a prior hearing involving exceptions to a master's report, stating the account between Archer and Major Tube, are conclusive as to Nassau which did not appeal from this determination.

The material facts are practically undisputed. In August 1971 Archer, which manufactures foil and paper products, entered into an agreement with Major Tube whereby Major Tube agreed to furnish all of Archer's needs for paper cores used in Archer's business, and Archer agreed to purchase all of its requirements from Major Tube. The agreement also provided that Major Tube would sublease at a stated rental a portion of a building under lease to Archer.

In January 1972 Major Tube borrowed $100,000 from Nassau and in May an additional $25,000. Major Tube assigned the proceeds of its contract with Archer as security for both loans and the security interest of Nassau was properly perfected. Prior to making the first loan Nassau advised Archer that it had secured an assignment. Archer responded by acknowledging receipt of the letter, accepting the assignment, and advising Nassau that there were no setoffs or credits against the contract as of January 28.

Major Tube was never able to supply all the needs of Archer, although Archer, as we

understand the record, did purchase all the cores that Major Tube was able to manufacture. In regard to the purchase of the tubes, on July 17 Major Tube and Archer modified their agreement to permit Archer to purchase tubes elsewhere, thereby ratifying a practice which Archer had pursued since the inception of the contract. Also, about the latter part of July Major Tube's financial difficulties prevented it from being able to purchase core paper on credit and Archer agreed to purchase the paper, store it on its premises, and deliver it to Major Tube as required. Archer then deducted the cost of paper from the invoice and forwarded the balance, in accordance with the assignment, to the New York office of Major Tube by check payable to Major Tube and Nassau.

The problem was solved only temporarily, and as Major Tube's financial situation deteriorated suits began to be filed by its creditors, some attempting to assert liens as to the real estate. On August 25 Archer cancelled the contract with Major Tube and thereafter dealt with it on a day-to-day basis until Major Tube finally ceased operation on November 17. During this period of time Archer deducted rent at the same rate provided for in the original contract from the payments due Major Tube.

Nassau, according to its senior vice president, Samuel Mitchell, had no knowledge of the modifications of the contract, nor of Major Tube's financial distress until about October when Nassau agreed, at the request of Major Tube and Archer, that certain of the assigned funds might be withheld and used to pay Major Tube's payroll.

These original consolidated suits were filed by certain creditors of Major Tube, and still other creditors intervened. Nassau Trust, a party defendant in one case, filed a cross-complaint against Archer to recover the balance owing on its loans.

At the request of Archer a special master was appointed to make and state an account as between Archer and Major Tube. The special master's report was filed on the 18th day of January 1974, and a number of exceptions were taken by the parties, in-cluding Nassau, which principally contended that the special master ignored its assignment in stating the account, and Archer, which complained that he improperly disallowed certain additional credits to which it was entitled.

A hearing was held on the exceptions and the Court thereafter sustained certain of Archer's exceptions and overruled all others. His order pursuant thereto recited that the special master's report was moot insofar as Nassau's exceptions were concerned, because the Chancellor felt constrained to dismiss Nassau's cross-complaint under the provisions of T.C.A. 48–1106 which, as to non-resident corporations not qualified to do business in Tennessee, and their assignees, denies access to Tennessee courts.

Nassau appealed and this Court, in an opinion entered on August 1, 1975, found that Archer had waived this defense by raising it too late, and remanded the case for disposition of Nassau's claim.

It does not appear that any further hearing was had and the Chancellor, taking the whole record, including pleadings, affidavits, and the testimony introduced at the exceptions hearing, rendered a judgment against Archer for the balance of the one hundred thousand dollar note (the $25,000 note had been paid by certain assets of Major Tube sold under court direction). In doing so the Court reasoned thusly:

> The Nassau Bank loaned substantial sums to the Major Tube Corporation which assigned all proceeds of a contract extant between it and Archer to the Bank as security for the loans. Tube also delivered properly executed and recorded financing statements to Nassau as additional security.

> R. J. Archer, Inc. expressly consented to the assignment.

> Tube fell upon bad days, was unable to deliver paper cores to Archer which purchased cores elsewhere and charged them to Tube, and thereby diluted payments under the contract. Archer also paid various sums to various clerks pursuant to garnishment; Archer handled these gar-

nishments sloppily; it answered some garnishments, failed to answer one, never pleaded the contract and assignment thereof, and obviously is liable to Nassau for the amounts thereof.

It may be stated generally that Archer essentially ignored the assignment after accepting and consenting to it, and is liable to Nassau for all "proceeds due thereunder," with interest from June 1974.

A proper beginning of our discussion would be the master's report, as amended by the Chancellor, which neither party seriously questions insofar as it states the account between Archer and Major Tube. The parties do, however, disagree as to whether Nassau is bound by the statement of account, as Archer insists, or whether Archer is not entitled to certain credits as against Nassau, though proper as to Major Tube, as Nassau insists.

## MASTER'S REPORT AS AMENDED

| | | |
|---|---|---|
| Total Invoices | | $129,211.85 |
| Less price increase not agreed to by Archer | | 9,325.87 |
| | | $119,885.98 |

| Credits | | |
|---|---|---|
| Cash payments | $23,457.50 | |
| Rejected cores | 2,201.92 | |
| Discounts | 1,164.11 | |
| Rent | 1,176.12 | |
| Core paper | 77,541.72 | |
| Cartons improperly charged to Archer | 1,275.00 | |
| Payments to court | 11,316.42 | |
| Other deductions | 124.55 | |
| | | $118,257.34 |
| Balance due Major Tube | | $ 1,628.64 |

The parties also agree that the controlling statute is T.C.A. 47–9–318, which provides as follows:

Defenses against assignee—Modification of contract after notification of assignment—Term prohibiting assignment ineffective—Identification and proof of assignment.—(1) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in § 47–9–206 the rights of an assignee are subject to

(a) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and

(b) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment.

(2) So far as the right to payment under an assigned contract right has not already become an account, and notwithstanding notification of the assignment, any modification of or substitution for the contract made in good faith and in accordance with reasonable commercial

standards is effective against an assignee unless the account debtor has otherwise agreed but the assignee acquires corresponding rights under the modified or substituted contract. The assignment may provide that such modification or substitution is a breach by the assignor.

(3) The account debtor is authorized to pay the assignor until the account debtor receives notification that the account has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor.

(4) A term in any contract between an account debtor and an assignor which prohibits assignment of an account or contract right to which they are parties is ineffective.

Addressing Nassau's contentions, it first insists that the language of subsection (2) "unless the account debtor has otherwise agreed," makes the modification of the contract ineffective as to it, and that Archer, as found by the Chancellor, made a direct promise to Nassau which, under the authority of *Commerce Union Bank v. Blalock*, 38 Tenn.App. 260, 273 S.W.2d 487 (1954), would not entitle Archer to the credits claimed. In the first place the Chancellor did not find a direct promise, unless it can be said to be implied from his order allowing recovery. In our view, the documents executed, including the acceptance, a superfluous act in view of subsection (4), are nothing more than an ordinary assignment, merely transferring the obligee's rights to the assignee. We cannot and do not construe this letter,[1] or any other acts on the part of Archer, as a direct promise to pay, nor do we find it estopped to deny its liability. In regard to estoppel, which requires a showing of prejudice, it is clear that the paper purchase, the major item of setoff, did not prejudice Nassau, but rather benefited it by enabling Major Tube to continue operation and make payments in August and September, which it would not otherwise have been able to do.

*Commerce Union,* in our view, is distinguishable from the case at bar. In that case the debtor "induced the bank to make the loan by representing that the work had been done and more than $13,000 would be paid therefor, and by promising that whatever was paid to Kerby Saunders would in turn be paid by it to the bank under the assignment." The Court went on to find that the debtor was liable on its promise to the bank and also was estopped by reason of its representation to deny its liability.

Turning now to Archer's first contention, we cannot agree that Nassau would be bound by the account stated between Major Tube and Archer, but rather, are of the opinion there can be items which would be a proper setoff against the creditor, which would be improper as to the assignee of the creditor. For example, under subsection (1)(b) a setoff unrelated to the account, though proper in an accounting between the creditor and debtor, is not proper as to an assignee when the debtor has notice of the assignment. Moreover, as above noted and as also noted by the Chancellor upon his initial ruling that Nassau could not maintain the action, the question of the accounting became moot.

We accordingly conclude that Nassau is not bound by the accounting, and that we should examine the credits allowed in light of the code section to resolve the remaining points in dispute, principally the credits allowed for the purchase of paper, for rental deductions and for payments made to court.

As to the purchase of core paper, it is undisputed that had Archer not purchased the paper Major Tube would have gone out of business the latter part of July rather than in November, and that it was absolutely necessary for them to have the raw material to be able to operate. Consequently, we find that this was a commer-

---

1. See appendix for full text.

cially reasonable modification of the contract as contemplated by subsection (2) and should be credited against any amount owed Nassau.

We are of the same opinion as to the rent deductions which also enabled Major Tube to continue in business.

■ The payments to court, two of which were in response to garnishments from the Sessions Court, one from a suit pending in Circuit Court, and the fourth an attachment issued in one of these consolidated cases, stand on a different basis. The debts, as we understand the record, did not arise out of the assigned contract and, in our view, their payment cannot be said to be a proper modification under subsection (2). Additionally, it does not appear that Archer made any effort to protect Nassau's assignment. In *Conner v. Allen,* 40 Tenn. 419 (1859), our Supreme Court held, in a case involving circumstances similar to those in the case at bar, that a garnishee who neglects to protect the interests of third parties "must pay the penalty of his own wrong and cannot avoid liability to the party entitled on the ground that he has paid the debt to another, although under color of legal process," and that it was the duty of the garnishee in his answer to the garnishment to have disclosed the interest of the third party. We appreciate that this case,

which is the only Tennessee case we have found addressing this question, is of ancient origin. However, the same rule has been applied in other jurisdictions in more recent pronouncements. *Valley National Bank of Arizona v. Brown,* 19 Ariz.App. 493, 508 P.2d 752 (1973); *Cole v. Randall Park Holding Co.,* 201 Md. 616, 95 A.2d 273 (1953); *Consolidated Rendering Co. v. Smith,* 94 N.H. 304, 52 A.2d 288 (1947). See also: cases annotated in 45 A.L.R. at page 655. Further, it would seem to us that if Archer's theory is accepted, assignees whose security interest has been properly perfected would have little protection against an attaching judgment creditor.

We, therefore, are of the opinion that, as above noted, Archer is entitled to credit for core paper and rent, but not for the sums paid to court, and that the award heretofore made by the Chancellor should be reduced to the sum of $12,945.06.

For all of the foregoing reasons the judgment of the Trial Court as modified herein is affirmed. The costs of appeal are adjudged one-half against Nassau and one-half against Archer.

PARROTT, P. J. (E.S.), and SANDERS, J., concur.

Appendix to follow.

APPENDIX

W. Bradley Blair
President

RJR Archer, Inc.
220 East Polo Road
Winston-Salem, N. C. 27102

*Exhibit.*
*Mitchell*

RJR Archer

January 28, 1972

Philip C. Kilian, Esq.
Payne, Wood & Littlejohn
139 Glen Street
Glen Cove, New York  11542

Dear Mr. Kilian:

This is in reply to your letter of January 7, 1972
requesting that we consent to the assignment by
Major Tube Corporation of monies to become due under
our contract with Major Tube dated August 17, 1971
as security for a loan to be made by your client,
Nassau Trust Company of Glen Cove, New York.  You
also asked us to advise whether that contract is
presently in effect and in good standing.

We do hereby consent to such assignment.

We are pleased to advise that our contract with Major
Tube Corporation dated August 18, 1971 is presently
in effect and that there are no defaults by Major
Tube Corporation and no claims or set-offs due to us
from Major Tube Corporation at this date.

After such assignment is made to your client, we
assume your client will advise us of the mechanics
of future payments.

Very truly yours,

W. Bradley Blair

CC:  Major Tube Corporation
     Mr. C. R. Ward

FILED
NOV 1 8 1974
JOHN A. ......
BY ......

IDENTIFIED
DATE ..... EXHIBIT #24 – Mitchell

FILED
MAY 30 1976
TIME ......
Rep.

IDENTIFIED ......
DATE ..... EXHIBIT # 24-Mitchell

EXHIBIT #24------Testimony of Mitchell

706

OPINION ON PETITION TO REHEAR

Nassau Trust Company has filed a petition to rehear, complaining that our original opinion allowed Archer credit for a one percent discount of $1164.11 and other miscellaneous deductions of $124.55.

Although our original opinion did not address these two items, they were considered. With regard to the discounts, the agreement provided as follows:

3.4 The price to be paid by Archer for tubes delivered hereunder, during the first twelve months of this Agreement, shall be those prices set forth in EXHIBIT D hereto, less fifteen percent (15%). Thereafter, and commencing on the first day of the thirteenth month after the date of this Agreement, Archer's payment to Tubes (sic) shall be determined monthly by the following method: Fifteen percent (15%) below the lowest market price for comparable tubes then available to Archer from any source.

In this connection, William G. Giasi, who was vice-president of Major Tube and manager of its Greeneville operation, testified as follows:

Q. It's true, is it not, that in the first place 1% 10 day discounts are customary in the trade, and particularly in the core trade?

A. I would say that is correct.

Q. And I believe that the pricing structure in the contract between Tube and Archer refer to the Sonoco prices as sort of a base point?

A. Right.

Q. And that Sonoco in its pricing structure offered a discount, too?

A. Right.

Q. 1% 10 days?

A. Yes. When they issued——we had the contract with an appendix with the prices. When they issued the blanket purchase order they——

Q. "They" being Archer?

A. Archer——it was brought up that they were getting "1–10".

Q. The purchase order on its face had written on it "1% 10 days"?

A. I guess for Archer's accounting purposes they issued us a blanket purchase order right as we began operation and they said that they were getting a "1–10" discount from Sonoco and——

Q. So, your invoices——that is, the invoices which Tube sent to Archer had written on their face "Terms, 1% 10 days"?

A. Correct.

Q. So, will you agree, then, that the discounts——that is, item #2 of the Special Master's Report, $1,164.11 is a proper discount taken for the 1% 10 day period?

A. Yes, I would,——

We accordingly conclude that, in light of Mr. Giasi's testimony, the contract as drawn contemplated a discount.

■ The second point raised by Nassau insists that at least one invoice was not paid within 10 days and, therefore, not entitled to be discounted. This was not considered in our original opinion because the case was argued and briefed on the theory that the discounts were improperly allowed because they were not provided for in the agreement, rather than because they were not paid at the proper time. Because this question was not initially presented we are disinclined to grant the petition.

Moreover, as to both propositions, the assignment provided that Nassau, after deducting all charges currently due it from the assigned proceeds, would credit the balance of the payments to Major Tube's checking account. This procedure was followed by Nassau deducting $3000 from each check (except the last one in the sum of $239.77) and delivering the balance to Major Tube. Thus, it can be seen that, assuming Nassau is correct and Archer was not entitled to the discount, even if Archer had paid the full invoice price, the situation of Nassau would not change because it was required to deliver the additional sums to Major Tube.

The miscellaneous items consist of a $53.20 credit for padlocker tape purchased for Major Tube, and a $51.35 credit as the

difference between credit taken for the estimated cost of stock delivered to Major Tube and the actual cost as finally determined. In our view both items are comparable to the purchase of core paper and subject to be credited.

Archer, in its response to the petition to rehear, complains of our not allowing credit for the funds paid into court. We seriously question whether the matter is properly before us in view of the fact that it was not presented within the 10 days provided by Rule 22 of this Court. In any event, the complaint is merely a reargument of matters previously considered by the Court and is overruled. We do concede in this connection that Archer is correct in that it will be required to make a double payment. This, however, is invariably the penalty exacted from a creditor who fails to protect an assignee. *Conner v. Allen,* 40 Tenn. 419 (1859).

PARROTT, P. J. (E.S.), and SANDERS, J., concur.